REGAN, Judge.
Plaintiff, the Mississippi River Bridge Authority, instituted this expropriation proceeding against the defendants, Oscar M. Gwin, Jr., Mr. and Mrs. John Groth and Mr. and Mrs. Leighton Morse, owners in indivisión of two tracts of land fronting on Dryades Street in the City of New Orleans, a portion of which plaintiff needed for the purpose of widening Dryades Street. Plaintiff requested that the court assign a reasonable value to that portion of each tract it wished to acquire.
Defendants answered and asserted that the land to be expropriated was valued at $47,000. They then prayed for recovery of expert realtors’ and attorney’s fees, which they were required to incur to prosecute this litigation since the plaintiff had made no offer to purchase for a reasonable value before the institution of this suit. Defendants argue that to deny this recovery would, in effect, deprive them of their property without due process of law, contrary to the mandate of LSA-Article 1, Section 2 of the Louisiana Constitution of 1921,[1]
From a judgment awarding defendants $34,000 for the portions of both tracts expropriated, and experts’ fees for two realtors of $200 each and for a contractor of $100, they have prosecuted this appeal.
The primary question which this appeal has posed for our consideration is whether the quantum awarded to defendants by the trial court is just and adequate compensation for the portions of land expropriated. For the purpose of clarity, we shall review the evidence affecting each tract separately.
The first, designated by municipal number 223 Dryades Street, contains in its entirety 2,363 square feet and the portion taken was 639 square feet from the front of the property. There was located thereon a single story brick building covered by a built-up roof, heavy duty flooring, fire doors and plastered walls. Prior to the expropriation this property rented for $350 per month, or $385 per month including utilities. The expropriation has necessitated removing the old front from the building and the replacement cost thereof has been estimated at $3,500.
In order to establish what plaintiff contended was the fair market value of the portion taken, it called upon the services of F. Poche Waguespack, a real estate expert. He assigned a value of $38.81 per square foot to this tract and based his valuation on his estimate of what the land would sell for on the open market were it put to its best possible use as a revenue producer. Waguespack was of the opinion that the land’s greatest value would be realized were it used as a parking lot, and concluded that the building thereon, rather than being an asset to the land was in fact detrimental.
For the 639 feet taken, Waguespack assigned a total value of $24,800, which figure was obtained by multiplying $38.81 by 639 which produced a monetary result of $24,-799.59, or rounded off, $24,800.
*177 The realtor further explained two other methods used by realtors to assign a market value to real estate, namely, the comparable sales method and the rental capitalization method, and his reasons for rejecting both in this case. It was his opinion that there were no comparable sales in the area upon which a true comparison could be made; however, he asserted that the closest comparison could be made with sales in the 200 block of South Rampart Street and these averaged between $18 and $20 per square foot. He also was of the opinion that the same figure would be reached by capitalization of the rental of defendants’ property. For this reason, he used the method most favorable to the defendants, namely, assigning a value based on assuming the land was being put to its best possible use. Since he used this method which gave the land alone double the value without the building, he concluded that the defendants were not entitled to further compensation for replacing the front of their building.
To rebut the foregoing conclusion, the defendants requested the appearance of Omar F. Kuebel, an expert realtor, to testify and he based his valuation on the market data approach, which consists of studying comparable sales and leases in the immediate area. He offered several illustrations of what he considered comparable sales or leases; however, these properties fronted University Place (the extension of Dryades Street from Common to Canal Streets). Since these properties are located about one block removed from Canal Street, they are valued at double the amount of properties situated in the next block, which is where defendants’ site is located. This was the consensus of opinion of all the real estate experts who appeared at the trial hereof. Some of the other comparable sales within recent years discussed by Kuebel are as follows:
200 S. Rampart Street — $69.29 per sq. ft.
201 S. Rampart — $71.10 per sq. ft.
204-10 S. Rampart Street — $39.34 per sq. ft.
228 S. Rampart Street $18.88 per sq. ft.
It will be noted that the first two properties listed are corner locations while the second two were sales resulting from auctions, which Kuebel reasoned caused them to sell at an unusually low price. Based on com-parables, Kuebel stated that the defendants’ property was valued at $40 per sq. ft. foi both the land and the building. For the land area taken, the fair price would be $25,500. In addition, Kuebel asserted that it would cost between $3,500 and $5,000 to replace the front of the defendants’ building. He therefore concluded that the expropriated property at 223 Dryades Street possessed a fair market value of $29,000.
Defendants’ second real estate expert, Norman deReyna, testified that he would assign a value of $40.80 per square foot to both the land and building expropriated. He used comparables to arrive at this conclusion. Defendants’ neighboring property on the Gravier Street side had recently sold for $37.93 per square foot, while the neighboring property on the Common Street side, closer to Canal, had sold for $48.35 per sq. ft. All experts agreed that the closer property in this area is to Canal Street, the greater is its value. DeReyna also collaborated with a building expert and concluded as a result thereof that it would cost defendants $5,000 to replace the front of their building.
The following table summarizes the experts’ valuations :
Expert Sq. Ft. Value Cost of Replacing Front Total
Waguespack $38.81 -0- $24,800
Kuebel 40.00 3,500.00 29,000
DeReyna 40.80 5,000.00 31,071.20
*178 At this point it is pertinent to observe that the defendants also requested the appearance of a building expert, Lucien Haase, who testified that the cost of replacing the front of the building in 223 Dryades would range between $4,500 and $5,000. Kuebel’s estimate of $3,500 was predicated upon the use of cheaper materials to replace the front. This expert also pointed out that the improvements had recently been remodeled. His testimony stands uncontradicted in the record.
In evaluating the foregoing evidence, the trial judge rejected the opinions of the defendants’ experts on the theory that the sales and leases cited were not true com-parables. While we agree that the values cited for University Place and South Rampart Street properties may not be considered comparables, we cannot agree that those discussed by deReyna, which were sales immediately adjacent to defendants’ property, were not comparables.
The law is clear to the effect that the best method of determining the value of expropriated property is by comparing recent sales of real estate in the same area in order to determine the price a willing buyer will pay a willing seller.[2] However, if the circumstances do not allow the application of this method, other factors may be taken into consideration.[3]
The trial judge apparently relied upon this principle in accepting the best use method of computation advocated by Wag-uespack. While we feel there are several comparables cited, the numerous other properties defendants listed that were truly not comparables compel us to conclude that the trial judge did not commit reversible error in rejecting the comparable method of approach in this instance. In addition to this, Waguespack’s estimate is only $1.19 per sq. ft. lower than one of the defendants’ experts and $1.99 lower than the other; and while Waguespack stated that he assigned no value to the improvements taken under the best use method, we think his explanation thereof is justified. It is true that the Supreme Court has enunciated the rationale that the value of the improvements must be taken into consideration; however, this pronouncement was made in instances where the real estate experts were predicating their valuations on comparable sales.
In view of what we have said hereinabove, we are compelled to conclude that the value of the property expropriated from the defendants in 223 Dryades Street was properly valued at $24,800[4] However, we are of the opinion that the trial judge erred in failing to allow defendants to recover the cost of replacing the front of their building. When only a portion of a landowner’s property is expropriated, he is entitled to the severance damage to his remaining property when that damage is substantial.[5]
The only building expert to appear placed the replacement value between $4500 and $5000; therefore, splitting the difference, we conclude that the award for this property should be increased by $4,750, creating a total of $29,550.
The second property which is the subject of this litigation is located in 433 Dryades Street. Situated thereon is a building containing 1589 square feet while the entire plot contains 3063 square feet. The total amount of land expropriated was 820 square feet, and of this amount 561 square feet was oc *179 cupied by the building thereon. The lot begins at a distance of 75 feet from the corner of Poydras and Dryades Streets.
All the real estate experts who appeared to testify in connection with the value of this property employed the comparable sales method in reaching a conclusion which they further fortified by use of the rental capitalization method.
B. Holland Johnson, a real estate expert, testified on the plaintiff’s behalf. He discussed the following sale prices of properties in the immediate neighborhood on a square foot basis:
Property Location Sq. Ft. Price Date of Sale
319-21 S. Rampart $9.77 February 14, 1957
523-25 S. Rampart 7.20 July 30, 1958
519-21 S. Rampart 8.67 February 15, 1957
Corner S. Rampart & Girod 9.25 September 18, 1958
816 S. Rampart 7.89 February 18, 1957
950 Perdido 12.53 February 14, 1956
Most of the properties set forth above are located from one block to three blocks removed from the defendants’ property; however, based on these figures, Johnson assigned a value of $10.50 per square foot to the tract expropriated, or $8610, which was limited to the land since Johnson reasoned that the building was of no value.
On cross examination, Johnson conceded that he was aware of two recent sales in the area, which he failed to mention on direct examination. One was the property known as Lawrence’s Restaurant, sold to the Bowen Company for $24.39 per square foot in 1955. Johnson said he did not consider this as a comparable sale because Bowen owned most of the property in the square and wished to acquire the Lawrence Restaurant tract, which adjoined his other properties, thus creating an unusually high selling price. This property, incidentally, fronts on Dryades Street and is located immediately across the street from defendants’ property. Defendants’ property also abuts the rear of that tract which was expropriated from Maylie’s Restaurant and for which the Bridge Authority paid $22.69 per square foot. Johnson rejected this as a comparable because it is located on Poydras Street and is on the corner, and further, because the restaurant’s reputation has increased the value of the property. Defendants’ property begins at a distance of 75 feet from the corner of Poydras Street.
The defendants relied upon the testimony of Kuebel and deReyna to establish the fair market value of this tract. Kuebel cited the following comparable sales upon which he ultimately arrived at a valuation of defendants’ property:
Sq. Ft. Price Date of Sale Location
March 1, 1957 421-31 Dryades VO OO
August 18, 1958 445 S. Rampart o O 1-1
In addition to these Kuebel cited the sale of Lawrence’s Restaurant and Maylie’s at $25 and $22 per square foot, respectively. He further discussed other comparable sales which occurred within a 150 to 200 foot radius of defendants’ property. These values ranged between $11.27 per square foot and $22. In addition, Kuebel said that the values of these properties had increased approximately 30% since 1956 and 1957 because of the development of the new Civic Center some two blocks removed therefrom.
*180 While Kuebel conceded that córner property is more valuable than property located in the center of a block, he estimated that the difference in value thereof is between 10 and 25%. Predicated on these figures and supporting them with comparable rentals, which we find unnecessary to discuss here, Kuebel estimated that defendants’ land was valued at $11 per sq. ft. To the building he assigned an additional value of $5.41 per square foot and he testified an expenditure of $3,000 was required to replace the front of the building, which had recently been remodeled and was, therefore, in good condition.
Kuebel’s total valuation may be summarized as follows:
820 sq. ft. of land at $11 per sq. ft. $ 9020.00 561 sq. ft. of improvements at
$5.41 per sq. ft. 3035.01
Replacing building front 3000.00 $15,055.01
Kuebel rounded this figure off to $15,000, which was his estimate of the value of the land and building expropriated, plus the damage to that portion of defendants’ property remaining.
DeReyna also testified using approximately the same method and some of the same statistics and placed a valuation of $15,743.-56 thereon as the total fair market value of the defendants’ land, plus the cost of reimbursing them for severance damage.
Haase again testified on defendants’ behalf in his capacity as a building expert and explained that the cost of replacing the front of the building was between $3,000 and $3,500 and this estimate was uncontra-dicted.
From the foregoing testimony, the trial judge concluded that the properties cited as comparables could not be used as such. He found that the monthly rental was $210 and explained that he capitalized this to give plaintiff an award of $9,200, which also included damages to defray the defendants’ cost of replacing the front of the building.
We reiterate, the jurisprudence is replete with authority to the effect that the best method of determining fair market value is to use the comparable sales method.
While counsel for plaintiff argues that its expert did not use comparables because there were none, we cannot agree with this conclusion after reviewing his testimony. In fact Johnson stated that the comparable sales approach was most favorable to the defendants. But in so doing, it appears that plaintiff’s expert rejected comparable sales for one reason or another where the price per square foot was considerably higher than that which he assigned to the defendants’ property. His reason for rejecting the Lawrence Restaurant sale was that it was a monopoly sale which did not reflect the true market value of the property because of the purchaser’s anxiety to acquire adjoining land. This approach in appraising has been specifically denounced by the Supreme Court, which was emphatic in pronouncing that monopoly sales must not be disregarded in determining fair market value.[6] In addition to failing to observe this rule of appraising, Johnson further refused to assign any value to the improvements expropriated, which, in comparable sales methods, the Supreme Court has also discounted. When the foregoing two considerations in appraising were disparaged by the Supreme Court, Johnson and Max Derbes, Sr., were the appraisers whose methods were criticized.[7]
In an expropriation proceeding, the plaintiff carries the burden of proving the fair market value of the property taken.
In view of the fact that two prime considerations upon which Johnson predicated *181 his estimate have been disavowed by the Supreme Court, we are compelled to conclude that we are unable to accept his valuation.
Kuebel, on the other hand, has cited sufficient comparables and adequately justified his estimate, which we think is the truest reflection of the fair market value of the property taken.
We are of the opinion that the defendants are entitled to have their front wall replaced at plaintiff’s expense since this is a severance damage to the remaining portion of the property caused by the expropriation. To replace the front, defendants must expend between $3,000 and $3,-500; in arriving at this figure the building expert failed to deduct an amount to cover depreciation of the old building front, which had been remodeled some six years previously. Since no depreciation was deducted from the estimate of severance damage, we think it is fair to allow $3,000, the minimum estimate, for restoring the front of the building, as Kuebel did in his valuation. Therefore, we are also of the opinion that the defendants are entitled to an increase in the amount awarded for the 433 Dryades property, that is, from $9,200 to $15,000.
We finally turn to defendants’ contention that their real estate experts are entitled to fees of $1500 each, which plaintiff should bear, and reasonable attorney’s fees, which are damages defendants incurred as the result of plaintiff’s failure to make a reasonable offer for the property before instituting this suit.
We find no merit in this contention. Even were we to conclude from the evidence that the plaintiff failed to tender to the defendants the true value of the land to be taken, then defendants would only be entitled to those amounts generally taxed as costs.[8] The judgment of the lower court has taxed as costs reasonable fees for defendants’ experts, in addition to the costs of these proceedings and the record fails to disclose that the amounts awarded are unreasonably low. Relative to defendants’ request for attorney’s fees, the law is too well settled to require citation in support thereof that attorney’s fees are only included in a judgment when they are authorized by statute, or the litigants have agreed in advance by contract as to their imposition.
For the reasons assigned, the judgment appealed from is amended and it is now ordered that defendants receive a total of $29,550 for the property in 223 Dryades Street and a total of $15,000 for 433 Dry-ades Street, or a grand total of $44,550 for both; in all other respects, the judgment appealed from is affirmed.
Amended and affirmed.

. “No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”

. The Mississippi River Bridge Authority v. Simon, 232 La. 668, 95 So.2d 144; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.

. State v. Crockett, La.App., 131 So.2d 129.

. In written reasons for judgment, the trial court erroneously stated this figure as $28,000.

. City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528.

. The Mississippi River Bridge Authority v. Simon, 232 La. 668, 95 So.2d 144; State v. Sauls, 234 La. 241, 99 So.2d 97; State v. Grand Consistory, etc., 237 La. 1005, 112 So.2d 692.

. Derbes and Johnson jointly appraised 433 Dryades Street; however, Johnson alone testified and described the same method for which his appraisal had been discounted by the Supreme Oourt.

. City of Shreveport v. Noel, 114 La. 187, 38 So. 137, 138.