229 So.2d 89

**STATE of Louisiana, Through the DEPART-MENT OF HIGHWAYS,**

v.

**Joseph R. MASON et al.**

No. 49654.

Nov. 10, 1969.

Rehearing Denied Dec. 15, 1969.

Dissenting Opinion Dec. 18, 1969.

---

Harry V. Booth, Henry A. Politz, of Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for defendant-relator.

D. Ross Banister, Chester E. Martin, Johnie E. Branch, Jr., J. David McNeill, III, Baton Rouge, for plaintiff-respondent.

McCALEB, Justice.

In this suit, defendant contests the adequacy of the $20,810 award deposited as just compensation by the Department of Highways in the registry of court for a ten foot strip of defendant's property taken by expropriation, under the provisions of R.S. 48:441 et seq., for the conversion of U.S. Highway 71 into a four lane highway in Bossier City. The amount deposited consists of $12,810 as the value fixed by the appraisers as just compensation for the land and improvements taken, and $8,000 as severance damages to the remainder.

The property owned by defendant fronts 550 feet on the highway and is located south of the West Gate of Barksdale Air Force Base in Bossier Parish. It consists of three units of commercial building improvements comprising (1) a service station, (2) a restaurant and cocktail lounge, and (3) a motel, real estate office and a beauty parlor. The service station and restaurant buildings were set back 50 feet from the highway before completion of the widening thereof, and the other units were set back 25 feet.

The Department of Highways, by this expropriation in 1964, has taken a strip of land along the front of defendant's property measuring 10 feet in width by 550 feet in length. This taking necessitated the removal of one pump island in the service station unit and resulted in some loss of front area parking for the motel, restaurant and lounge, real estate office and beauty parlor businesses. These factors are the basis for a claim of $131,257.00 as total compensation due to defendant.[1]

The trial court awarded the sum of $46,678—$9,645 for the fair market value of the land and improvements taken and $37,033 for severance damages to the remaining portion.[2]

---

1. Defendant contends the value of the land taken is $15,313.00 and severance damages due, because of the loss of front parking and the taking of part of one of the pump islands in the service station, is the sum of $115,944.00.
2. The trial judge assigned $1.33 per square foot or a total of $7,315 for the land taken, $190 for asphalt, $1,965 for concrete curbing, $175 for gravel, making a total for land and improvements in the amount of $9,645. As to severance damages, he allowed the sum of $4,803 for the relocation of the pump island partially taken and $32,230 as damages to the other units, which represents a 15% re-

An appeal was taken by defendant and answered by the Department praying for certain reductions in the judgment. The Court of Appeal agreed with the trial court's award of $7,350 for the land alone, but increased the award for the land and improvements to the sum of $13,550. The judgment was also amended so as to reduce the award for severance damages to $10,-803.[3]

It was the conclusion of the Court of Appeal that " * * * defendant has failed to prove that the taking of the strip fronting on his property has been a substantial or discernable factor in the diminution of the motel revenue nor has the taking adversely affected the rental value of the business units." The court, in discussing the applicable law, stated:

"In the application of the law of eminent domain our jurisprudence recognizes that the owner of property involved in condemnation proceedings is entitled to be compensated for its market value and the courts will endeavor to place him in as good a position pecuniarily as he would have been if the property had not been taken. Also it is established law that when only a part of the property is taken and damage is

caused to the remainder, the owner is entitled to the resulting damages as severance damage. There the measure of the award is determined by arriving at the value immediately before and after the expropriation. When application of this rule is not available other acceptable methods may be employed. In measuring consequential damage, however, damages must not be anticipated or be too remote and speculative. Injuries from discomfort and disturbances to the owner or to business are not recoverable. It is encumbent upon the owner to prove to a reasonable certainty the damages claimed. City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959); State through Dept. of Highways v. Barrow, 238 La. 887, 116 So.2d 703 (1959); State through Dept. of Highways v. Madden, La.App., 139 So.2d 21 (2nd Cir. 1962)." See State Department of Highways v. Mason, La.App., 218 So.2d 329, 333.

Defendant applied for a rehearing in the matter (it was a two to one decision) and the application was granted. However, on reconsideration the majority of the appellate court reinstated the original judgment. Defendant then applied to this Court for certiorari, and the Department opposed

duction of rental based on loss of parking.

3. Apparently this latter figure comprises $4,803 as the "cost to cure" the relocation of the outer pump island and $6,000 which the state's experts testified was the damage suffered by loss of parking

to the beauty parlor and real estate units. The award of $13,550 for the land and improvements apparently comprises, in addition to the value of the land itself, certain awards for signs, gravel, concrete curbing and other items.

the application and moved that it be dismissed. Certiorari was nevertheless granted, and the case has been argued and submitted for our decision.

■ We note, imprimis, that the Department insists that this Court is without constitutional or legal authority to consider the writ inasmuch as an application for a rehearing has never been refused by the Court of Appeal. In support of this position the Department's counsel rely on R.S. 13:4450, and more particularly on Section 11 of Article VII of our Constitution, empowering inter alia this Court to require by writ of certiorari any case to be certified from the Courts of Appeal to it for review " * * * provided, however, that the Supreme Court shall in no case exercise the power conferred by this Article unless the application shall have been made to the court * * * within thirty days after a rehearing shall have been refused by the Court of Appeal * * *."

. We find no merit in the argument. The requirement that the application for certiorari be made within thirty days after a rehearing has been refused by the Court of Appeal applies only in matters in which the relator has applied for and been refused a rehearing by the Court of Appeal. It has no relevance to a matter like this wherein the Court of Appeal has granted a rehearing to the relator and the court on rehearing has reinstated its original decree.

The manifest purpose of the requirement that a rehearing be applied for and refused by the Court of Appeal is to accord that court an opportunity to reconsider its opinion which has aggrieved one or more of the parties. But the law does not require a litigant to do a vain and useless thing—for it would be vain and useless (unless the appellate court specifically granted leave to do so) for a litigant to apply for a second rehearing in a case where the court has twice rejected his contentions. It is for this reason that the rules of this Court and the Uniform Rules of the Courts of Appeal provide that, when a case has been decided on rehearing, another petition for a rehearing will not be considered unless the applicant has not' theretofore applied for and been granted a rehearing or unless the court, in deciding the case on rehearing has expressly reserved to the unsuccessful party or parties the right to apply for another rehearing.

The motion to dismiss the writ of certiorari is overruled.

■ On the merits it is the position of defendant that the Court of Appeal erred in failing to award the full cost of restoring the service station to the condition as existed prior to the taking, i. e., a two pump island, four lane, six pump station. This is hereinafter referred to as the "cost to cure" argument of defendant.

In addition, defendant contends the court erred in concluding that no severance damages were due to the motel, lounge and restaurant as a consequence of loss of front parking caused by the expropriation of the 10 foot strip across the front of defendant's property.

Thus (the Department of Highways not having applied for a writ), the only issue presented is that of severance damages and the correctness of the award thereof made by the Court of Appeal.

Counsel for defendant initially argue that $27,634 should be awarded for severance damages to the service station. This is the sum, which one of defendant's witnesses testified, would be required to demolish and reconstruct the service station building so as to provide space for two pump islands with four lanes, which the station had previous to the expropriation of the 10 foot strip by the Department.

Much of the testimony on the question of severance damages to the service station is devoted to the amount of gallons sold by this station on a monthly and yearly basis. The theory was advanced that, since the station was under lease by relator to American Oil Company for a monthly rental of $222.75, plus a 1½ cent bonus for every gallon sold in excess of 15,000, the decrease in gallonage sold after the expropriation should be regarded as a reduction in rental income and this was in part a measure of severance damages due.

Counsel assert the Court of Appeal, in failing to correctly apply the "cost to cure" concept has produced a conflict with earlier decisions by the Second Circuit and other circuits. They cite the cases of Michael v. State Through Department of Highways, (2nd Cir. 1961) La.App., 129 So.2d 587; Dow v. Department of Highways, (2nd Cir. 1965) La.App., 179 So.2d 666; State Through Department of Highways v. Ouachita Parish School Board, (2nd Cir. 1964) La.App., 162 So.2d 397, cert. denied; and Mississippi River Bridge Authority v. Gwin, (4th Cir. 1962) La.App., 138 So.2d 175.

At the outset it is apt to observe that there are no decisions of this Court which have approved the so-called "cost to cure" concept as such in determining severance damages in Louisiana. The rule is stated by this Court in State Through Dept. of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261, as follows:

"It is well settled in our jurisprudence that the damages allowable under Section 2 of Article 1 of the Constitution of 1921, resulting from expropriation of property rights is the difference between the market value of the property for sale or rental purposes immediately before and immediately after the expropriation. Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; American Tel. & Tel. Co. of Louisiana v. Maguire, 219

La. 740, 54 So.2d 4 and Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260."

See also State Through Dept. of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364 (1960). Nichols on Eminent Domain, 3rd Ed., in Vol. 4, states the rule thusly:

"Section 14.232. Before and after rule. " * * * the measure of compensation when part of a tract is taken is the difference between the fair market value of the whole tract before the taking and the fair market value of what remains after the taking."

Louisiana cases cited in support of the foregoing text are American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4; Parish of Lafayette, etc. v. Hernandez, 232 La. 1, 93 So.2d 672; Efurd v. City of Shreveport, 235 La. 555, 105 So. 2d 219; and State Through Dept. of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261.

The "cost to cure" concept has been recognized and accepted in the jurisprudence of the Courts of Appeal in considering expropriation cases following the constitutional change in 1960 of the appellate jurisdiction of these courts and this Court.

Three cases from the Second Circuit (the Michael, Dow and Ouachita Parish School Board matters) and one from the Fourth Circuit (the Gwin case) are relied on by relator in the support of this method of measuring consequential damages, which counsel for relator say the Court of Appeal failed to properly apply in this matter.

We think the Court of Appeal was correct under the facts herein.[4] The "cost to cure" concept has been brought into our appellate court jurisprudence apparently by various expert appraisal witnesses, and some appellate courts have adopted it without referring to it as a "cost to cure" theory. If such an approach has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking, for we find no sound basis in this Court's jurisprudence for the application of this method of assessing severance damages, save in a most unique situation (which is not present here) like that appearing in State Department of Highways v. Ouachita Parish School Board, 162 So.2d 397 (cert. denied). See also Nichols on Eminent Domain, 3rd Ed., Vol. 4, Sec. 12.32, pages 217–238, which indicates that this approach may be used in special instances wherein the

---

4. Actually, the Court of Appeal applied the "cost to cure" theory in the case by allowing recovery of $4,803 for relocating the outer gasoline pump station. Indeed, this item of damages was properly allowed since the appraisers for the Department admitted that relator was entitled to consequential damages for the relocation of this gasoline pump island from the right of way expropriation.

ascertainment of market value of the facility is not possible.

On the other hand, it has been held, in line with the general law on the subject, that the costs of removal or relocation of buildings, et cetera, are not recoverable as an item of consequential damages. They are considered as damnum absque injuria. See Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40 (1957); and State Through Dept. of Highways v. Gani, La. App., 138 So.2d 683 (cert. denied), 1962.

Nevertheless, the replacement cost of a building or other facility may be considered in determining consequential damages, but only as a factor which may directly affect the reduction of market value as a result of the partial taking. See Mississippi River Bridge Authority v. Gwin, supra. In the case at bar, we hold that the Court of Appeal did not err in disallowing the removal and relocation costs sought by relator.

■ Since the property involved herein is commercial rental property, any loss of rent sustained may be considered as a factor in determining whether the market value of the property remaining has been diminished as a result of the partial taking. However, there is no evidence exhibiting that, at the time of trial, those properties which had been rented by relator had been subjected to a loss of rental revenues.

Relator complains, as we understand his position, that there has been a rental reduction accruing to him as a result of the destruction of one of the gasoline pumps situated on the property taken and that, since his lease provides for a monthly bonus rental on all gallonage over 15,000 gallons sold by the station, he has suffered a diminution in rental. But, while the record shows there has been a reduction in the number of gallons sold during some years, we agree with the Court of Appeal that any severance damages based on this item of loss is highly speculative. That court, in rejecting this claim, stated:

"Figures affecting actual revenue were available only as to the operation of the service station and motel. It is conceded that any severance damage arising from a loss of rental income by the service station could result from relocation of the outer pump island. However, only the gallonage record was tendered in evidence. It showed an average monthly output of 16,648 gallons of gasoline for 1964 and 13,394 gallons for the year 1965. This evidence covered records for all months in 1964 and 1965. Also furnished were the records for the first four months of 1966 which we considered inconclusive. Evidentially other contributing factors were at work such as competition, management, etc. Seemingly indicative of such causes, in the month of April, 1966, the pumps produced 16,175

gallons and in the month of February, 1966 produced only 7,766 gallons."

We finally consider relator's contention that the partial taking has reduced the earnings of his motel. Mrs. Mason testified as to the annual gross receipts from the motel for the years 1961, 1962, 1963, 1964 and 1965 as $73,370.21; $74,773.22; $74,223.02; $73,318.02; and $71,927.30 respectively. It is argued that the reduction in annual gross receipts during the years 1964 and 1965 result primarily from the fact that the expropriation of the ten foot strip has reduced the parking facilities to such an extent that it has affected the motel business and that this factor will also affect the rental value of the other businesses, the restaurant and lounge.

We do not think the evidence sustains such a result. On the contrary, we believe that this claim is highly speculative and approve the reasoning of the Court of Appeal when it said:

"Turning to the alleged loss of rental income of the motel, we find the actual gross receipts for the first four months of 1962 were 9% more than the year 1963; in 1963 4% more than the year 1964; and in 1964 3% *less* than the gross receipts for the year 1965. The gross income for the year 1965 was 98.4% of the 5 year average 1962 to 1965 and the gross annual revenue for the year 1965 was approximately $2,800 less than the high gross annual revenue for the year 1962. Therefore, we find a trend in which the revenue of the motel began to decrease prior to the expropriation proceeding brought in April, 1964. During the same period the business rental units maintained their same rental payments."

The court then correctly concluded that:

" * * * defendant has failed to prove that the taking of the strip fronting on his property has been a substantial or discernable factor in the diminution of the motel revenue nor has the taking adversely affected the rental value of the business units."

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

SUMMERS, Justice (dissenting).

I cannot agree with the refusal of the Court to allow severance damage. Both expert witnesses for defendant testified to substantial severance damage. Although their credibility or competence as experts was not questioned, testimony of defendants' experts has, in effect, received no attention from the Court.

I respectfully dissent.