AYRES, Judge.
In this expropriation proceeding, the issue is one relating to the damages sustained by that portion of defendants’ property remaining after the taking. The value of the land taken was stipulated to be $2,000 and the value of the improvements taken was admitted to be $480. These amounts, together with the sum of $6,000, representing severance damages, were deposited in the registry of the court upon the institution of this proceeding. After trial, the award for severance damages was increased from $6,000 to $10,000 and, from the judgment thus rendered and signed, defendants appealed and prayed for an increase in the award.
The taking of defendants’ property was occasioned by the construction of a north- and-south expressway in the City of Monroe so as to join North Fifth Street with Louisville Avenue, the latter a main thoroughfare and a segment of U. S. Highway 80 as it traverses the city.
Prior to the taking, defendants’ property consisted of an inside lot with a width of 100 feet fronting north on Louisville Avenue and extending between parallel lines in a southerly direction for a distance of approximately 76 feet to an alley. On the lot was a commercial building of the dimensions of approximately 60 x 100 feet. This building was set back from Louisville Avenue a distance of approximately 16 feet, 2½ feet of which comprised a concrete sidewalk extending across the lot adjacent to and in front of the building. This walkway was approximately eight inches higher than the remainder of the area which was used for parking.
The area taken by the State in full ownership comprised 562.69 square feet, triangular in shape, extending from the east boundary line of defendants’ property westerly along the south right-of-way line of Louisville Avenue a distance of 87.01 feet. The base of this triangle, 13.58 feet, extended along the east boundary line of defendants’ property.
The issue presented for resolution concerns primarily the question of the effect of the elimination of the area which afforded parking space for approximately 10 cars in front of defendants’ property as such relates to the value of the remaining property.
*672 A small portion of the eastern end of the commercial building located on the lot was segregated from the remainder by a partition. This area was leased to a sewing machine concern for a rental of $125 per month. The lease expired in April, 1968, approximately two months before the expropriation of defendants’ property. The remainder of the building was leased to the operator of a cocktail lounge for a monthly rental of $400. This lease expired June 30, 1969, or approximately a year following the expropriation.
As originally constructed, the building extended to the south right-of-way line of Louisville Avenue. That was prior to the location of U. S. Highway 80 along that avenue. On-street parking was the only parking available for the building. Subsequently, however, the building was cut back at the front and the aforementioned off-street parking was provided. By appropriate marking, the area provided for the perpendicular parking of 10 vehicles. However, the space of approximately 13½ feet in width was insufficient. Cars parked thereon extended over the boundary and into the right of way of the street. This was the situation as it prevailed at the time of the institution of this proceeding.
Upon the expiration of the lease of the sewing machine company, defendants were unable to negotiate an additional lease with that organization. However, that tenant remained in possession of the portion of the property leased to it until early 1969 on a month-to-month rental basis. That tenant contended it could not conduct its .business without off-street parking and eventually vacated the premises. When the lease for the cocktail lounge expired, that tenant refused to execute another written lease, but remained in possession on a month-to-month rental basis at a rate of $250 per month. When the sewing machine concern vacated the premises formerly leased by it, the space was taken over by the cocktail lounge without any increase in rent. Defendants have been unable to secure other tenants or to increase the rent.
By the construction of a high curb along the south side of Louisville Avenue, defendants were denied access to the frontage of their property not taken by the expropriation. Thus, defendants contend that, because of the taking of their storefront parking area, their income from the property has been reduced from $525 to $250 per month.
Four expert witnesses testified on the trial of this cause. — two, W. Dean Carter and J. Wayne Medley, for the State, and E. A. Porter, Jr., and W. Gilbert Faulk for defendants. Various approaches were utilized by each of these witnesses in arriving at his estimates of value of the property before and after the taking. These included approaches with respect to cost, income, and market value.
Carter estimated that prior to the taking defendants’ property had a value of $51,-000, $23,000 for the land itself and $28,000 for the improvements. His estimate was that the property, after the taking, had a value of $43,000. Carter’s after-taking value was based solely on “cost-to-cure.” He started with an estimate of $6,000 as being a reasonable cost of purchasing additional property to replace the lost parking area and worked backward from there in arriving at the value of the remaining property.
In evaluations predicated upon an income basis, Medley estimated defendants’ damage at $7,340. This estimate is predicated upon a reduction or loss in rent of $75 per month. The loss, however, was shown to have been $275 per month through a reduction of the rent of the cocktail lounge from $400 to $250 per month and the total loss of the $125 per month for the space formerly occupied by the sewing machine concern inasmuch as defendants were unable to subsequently rent it. However long this failure to rent the property may continue would be a matter of conjecture.
Porter estimated that the lands and buildings prior to the taking had a total *673 value of $46,875, $30,375 for the land and $16,500 for the buildings. His estimates of the valuation after the taking were $28,125 for the land and $626.27 for the buildings, or a total of $28,751.27. Thus, taking into account the $2,000 value of the land taken, he fixed the damages or reduction in value of the remaining property at $19,634.50, an average of the results of his estimates from his various approaches.
Faulk was of the opinion that due to a complete loss of frontage access to the property, as well as a loss of off-street parking facilities, leaving access to the property by way of the rear alley only, the property had sustained damages in the sum of $24,840.
In commenting upon the testimony of these several witnesses respecting their appraisals, the trial court pointed out that the loss of 10 parking spaces in front of defendants’ buildings would unquestionably cause some decrease in the value of the remaining property, for no doubt any prospective purchaser would be concerned about off-street parking and would necessarily take into consideration the cost to either remodel the building so as to provide off-street parking or to purchase other property suitable for that purpose. It was reasonable to assume that a reduction in rent would follow because of the loss of parking space.
Defendants vigorously contend that the approach of the evaluations and loss as made by their witnesses upon an income basis and before and after market value is a proper approach rather than that based on a cost-to-cure method used by Carter and held inappropriate in State, Through Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969).
However, as pointed out by the trial court, the evidence, when carefully considered, revealed facts bearing upon the issue of severance damages other than the taking of defendants’ property. For instance, the parking area prior to the taking was insufficient. The space was too narrow, only 13½ feet wide, to permit perpendicular parking without encroaching upon the street.
We are convinced, as was the trial court, there has been a substantial diminution in the value of the remaining property because of the limited parking and the want of access from Louisville Avenue. The loss, in our opinion, is not nearly so severe as contended by defendants, but more than that allowed by the trial court. A greater loss in rent was sustained due to the taking than that testified by Medley upon which the award was apparently predicated, although the trial court did award more than the Medley appraisal.
Defendants specifically assign as error the failure of the court to find actual severance damages in any of the precise amounts, or averages thereof, as testified by the several expert witnesses. This position is, in our opinion, without merit. It was observed in State, Through Dept. of Hwys. v. William T. Burton Indus., Inc., 219 So.2d 837, 845 (La.App., 3d Cir.1969; 254 La. 14, 222 So.2d 67 [1969] — writs denied):
“Both parties contend that the trier of fact is not authorized to determine the severance damages in an amount to which no expert testified, by rejecting the precise amounts to which each expert had testified. We disagree. The trial court’s power to do so is a necessary correlative of the fact-trier’s right to evaluate the weight to be given to each witness’ testimony, as well as of its right to make factual determinations as to which of the factors relied upon by the witnesses relevantly influence market value and severance damage. The trial court is not required to accept or to reject the testimony of each witness in toto.” (Emphasis supplied.)
*674 This pronouncement was followed and adhered to in State, Through Department of Highways v. Salassi, 244 So.2d 871, 877 (La.App., 1st Cir. 1971). There it was observed:
“Furthermore, the trier of fact has the right to evaluate the weight to be given to the testimony of each witness in an expropriation case and has the right to make factual determinations as to which of the factors relied upon by the witnesses relevantly influenced market value and severance damages. The trier of fact is not required to accept or to reject the testimony of each witness in toto. Accordingly, it has been held that the trier of fact is authorized to determine severance damages in an amount to which no expert testified by rejecting the precise amounts to which each expert testified, such being a necessary correlative of the fact-trier’s right to evaluate the weight to be given to each witness’ testimony.” (Emphasis supplied.)
This same principle would obviously have equal application to an appellate court’s exercise of the same discretion and prerogative. Therefore, as heretofore noted, the loss of rent was greater than that upon which the severance damages were fixed. An increase in the award by an additional sum of $3,000 appears to us to be more in keeping with the facts and more nearly commensurate to compensate defendants for their loss.
For the reasons assigned, the judgment appealed is amended by increasing defendants’ principal award from $12,480 to $15,-480, less credit of $8,480, with legal interest on the remaining sum of $7,000 instead of $4,000 and, as thus amended, it is affirmed, with the taxation against plaintiff-appellee of all such costs as are legally assessable against it.
Amended and affirmed.