276 So.2d 918 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellant,
v.
M. G. REALTY COMPANY, INC., et al., Defendants and Appellees.
No. 4146.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Rehearing Denied May 24, 1973.
*919 Jack C. Fruge, Ville Platte, Edward A. Kaplan, Alexandria, for plaintiff and appellant.
Mansour & Lauve by Alfred A. Mansour, Alexandria, for defendants and appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a companion case to State of Louisiana, through the Department of *920 Highways v. Maude S. Goudeau, La.App., 276 So.2d 923, in which a separate decision is being rendered by us this date. In the present case, the defendant, M. G. Realty Company, Inc., owned a parent tract containing 2.814 acres and having a frontage of 165.06 feet on the south side of Louisiana State Highway No. 1 about 1½ miles west of Alexandria. At the time of the taking, the property was under lease to Crystal Oil & Land Company for use as a service station and liquor store. For the purpose of widening the existing highway, the Department expropriated the entire frontage to a mean depth of 110 feet and containing .416 acres. Plaintiff deposited $18,214 for the land and improvements taken. After a trial on the merits, the district judge awarded the landowner $35,000, less the amount of the deposit. This award was itemized as follows: $12,000 for the land taken; $18,000 for the improvements taken; $2,000 in severance damages to a wooden framehouse which after the taking was left on the remaining land only five feet from the new right of way line; and $3,000 for "lighting fixtures, wiring, etc. not included in the appraisal of the State's appraisers." Plaintiff appealed. Defendant did not answer the appeal.
Having decided in the companion case that the front land-rear land method of appraisal must be used, rather than the before and after method, the remaining issues relate to the correctness of the awards for the various items listed above.
THE VALUE OF THE LAND TAKEN
As in the companion case, the Department's appraisers, Mr. Darrel Willet and Mr. Thad Toups, used only the before and after method of appraisal. Hence, the only expert testimony in the record as to the value of the frontage taken, separate from the rear, is that of defendant's appraisers, Mr. Hab Monsur and Mr. W. C. Webb. Mr. Monsur appraised the 165.06 feet of frontage taken to a depth of 110 feet at $90 per front foot or a total of $14,855. Mr. Webb appraised the land taken at $100 per front foot for a total of $16,506. Thus, the trial court's award of $12,000 for the land taken was amply supported by the expert testimony.
THE IMPROVEMENTS TAKEN
The Department's expert, Mr. Willet, appraised the improvements taken as follows: (1) commercial building (used for service station and liquor store), $10,982; (2) concreted areas, including islands, $4,597; (3) frame residence apparently in taking (contributory value for salvage), $788. Mr. Willet thus appraised the improvements taken at $16,367.
The Department's other expert, Mr. Toups, appraised the value of the building used for a service station and liquor store at $11,658, the concreted area at $3,538 and the frame house as salvage for $600 for a total of $16,796.
The defendant's expert, Mr. Monsur, appraised the main building at $10,248, the concreted area at $3,571 and culverts at $720, for a total of $14,639. Mr. Webb appraised the main building at $9,074, the concreted area at $3,571 and the culverts at $720 for a total of $13,365.
From the above brief resume of the expert testimony, the highest evaluation of the main building and the concreted areas is that by Mr. Willet, which totals $15,579. At the time of their appraisals, Mr. Willet and Mr. Toups apparently thought the frame residence was located on the land taken and gave a salvage value for this item. But actually this frame residence was not taken and must be treated under our discussion of severance damages which will follow.
The district judge awarded $18,000 for the "main improvements" taken. His written reasons give no detailed explanation as to what these "main improvements" consist of, but from the fact that he makes a separate *921 award of $3,000 for the "lighting fixtures, wiring, etc. not included in the appraisal of the State's appraisers" we must assume that the award of $18,000 was for the building used as a service station and liquor store and for the concreted area and culverts.
The highest appraisal in the record for the building and concreted area is that of Mr. Willet in the sum of $15,579. Giving the landowner every benefit of the doubt, we will add to this amount the sum of $720 for the culverts, as itemized by defendant's experts, and award the defendant the total sum of $16,299 for the improvements taken.
THE SERVICE STATION EQUIPMENT
The district judge awarded $3,000 for the "incidental lighting fixtures, wiring, etc. not included in the appraisal of the State's appraisers." At the time of the taking, the land and buildings were owned by M. G. Realty Company, Inc. and leased to Crystal Oil & Land Company for use as a service station and liquor store. In its original petition, the Department named both of these parties as defendants. Shortly after the taking, the lessor and the lessee entered into an agreement, whereby the lease was canceled and the lessee received the sum of $12,500 as payment in full for its share of any proceeds obtained from the Department in these expropriation proceedings. And the lessee assigned to the lessor all of its rights to any other proceeds awarded. However, the agreement contained the provision that the lessee reserved the right to "remove its property from the premises in accordance with Article IX of said lease agreement, as amended."
We do not find in the record a copy of the lease agreement or the amendment thereto. But the defendant landowner's expert, Mr. Monsur, testified that at the time of the taking the lessee, Crystal Oil Company, owned certain service station equipment located on the premises. Mr. Monsur's appraisal report contains a letter from the lessee stating that the replacement cost of its equipment is as follows: Tanks$4,000; piping$2,000; lights$3,500; and electric wiring$5,000. The total is $14,500. In his appraisal, Mr. Monsur depreciated these items by 15%, which leaves a value of $12,325.
As stated above, the Department's experts did not list this service station equipment in their appraisals of the improvements taken. We are unable to determine from the record whether this equipment was removed from the premises by the lessee under the agreement which gave it this right. In any event, the defendant landowner has not proved it owned this equipment. For this reason alone, it is not entitled to any compensation therefor. We conclude the record does not support an award to the defendant landowner for this service station equipment.
SEVERANCE DAMAGES TO THE FRAME HOUSE ON THE LAND NOT TAKEN
At the time of the taking, a small frame house was located immediately behind the service station and liquor store. It had been used at one time as a residence by the manager of the service station, but at the time of the taking it was being used for storage space. Mr. Monsur testified the building was in a poor state of repair. He estimated it would cost about $5,000 to place it in such condition that it would be worth $8 per square foot, which for the 1,366 square feet would make its value $10,928. Monsur depreciated this by 50% to give it a value of $5,464 before the taking. He estimated that as a result of the taking the house was damaged 75% because the entrance is only five feet from the new highway boundary line. On this basis, Monsur estimated severance damages of $4,098 to the remaining property not taken. The defendant's other appraiser, *922 Mr. Webb, used a similar method to find an estimated severance damage of $5,464.
As stated above, the Department's experts apparently thought that this frame house was located on the land taken. They gave it a salvage value of about $750.
LSA-La. Const. Art. 1, Sec. 2 provides in part that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Emphasis added) Generally, the courts have used the term "severance damage" to describe compensable injuries to remaining property which flow from the partial expropriation of a tract of land. As a general rule, the measure of severance damages is the difference between the market value of the remaining property before and after the taking.
For instance, in the similar case of City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 394 (1959), the City expropriated a portion of defendant's residential premises to extend a new street. After the taking, the residence was only 23 feet from the new street. Defendant claimed severance damage of $30,500, which was the amount required to move the house to a proper setting. However, our Supreme Court rejected this contention and held that the measure of severance damages was the decreased market value of the home resulting from the taking, which the evidence showed to be only $15,000.
In the more recent case of State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), the State expropriated a 10-foot strip from the front of defendant's property, which he was using as a service station, restaurant and motel. Defendant contended the measure of severance damages was the "cost to cure", i. e., the cost of demolishing and reconstructing the service station building, so as to provide space for two pump islands with four lanes, which the station had previous to the taking. Our Supreme Court rejected this "cost to cure" concept in such a situation. It held that the measure of severance damages was the difference between the market value of the remaining property before and after the taking.
Applying these rules to the present case, defendant landowner had the burden to prove the value of the remaining land, including the frame residence, before and after the taking. Only by showing a diminution in value of the remainder could defendant establish severance damage. The record contains no such evidence.
Furthermore, looking at the inferences which can be drawn from the record, we note that before the taking this small frame residence was in a very poor state of repair and was located immediately behind the service station and liquor store. It had little if any market value as a residence. Probably, its only value was for storage space as a part of the service station premises. This was the use to which it was actually being put at the time of the taking. It possibly could be argued that after the taking the building was rendered useless because the service station was removed and the house is now too close to the highway to have any value for residential purposes. But it also occurs to us that after the taking the remaining property will front on a new four-lane highway and will probably have greatly enhanced value for commercial purposes. If so, defendant has suffered no severance damages to the remainder. We conclude no award can be made for severance damages to the remaining land and frame house not taken.
OUR CONCLUSIONS
We conclude the award to the defendant landowner must be reduced to the sum of $28,299, itemized as follows: $12,000 for the value of the land taken and $16,699 for the improvements taken. The record does not support an award to the defendant *923 landowner for the service station equipment or severance damages.
THE DECREE
For the reasons assigned, the judgment appealed is amended so as to reduce the award to the defendant, M. G. Realty Company, Inc., from the sum of $35,000 to the sum of $28,299, less the sum of $18,214 previously deposited in the Registry of the Court. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the defendant appellee.
Affirmed, as amended.
HOOD, J., dissents from the part of the majority opinion which affirms the trial judge's award for the land taken, for the reasons assigned in his dissent in State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3 Cir. 1972).