446 So.2d 1327 (1984)
CENTRAL LOUISIANA ELECTRIC COMPANY, INC., Plaintiff-Appellant,
v.
Pugh T. HUCKABAY, Jr. & his wife, Julie Roquin Huckabay, Defendant-Appellee.
No. 16000-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
Writ Denied May 11, 1984.
*1328 Horton & Jones by Donald G. Horton, Natchitoches, for defendant-appellee.
Gahagan & Gahagan by Russell E. Gahagan, Coushatta, for plaintiff-appellant.
Before MARVIN and JASPER E. JONES, JJ., and CULPEPPER, J. Pro Tempore.
CULPEPPER, Judge Pro Tem.
This case is consolidated for trial and appeal with No. 16,001-CA entitled "Central Louisiana Electric Company, Inc. versus James M. Herring and his wife, Paula Vetter Herring", 446 So.2d 1333, in which a separate judgment is being rendered by us this date. These are expropriation cases filed by Central Louisiana Electric Company against two separate land owners, James M. Herring who owns a 240 acre tract of land and Pugh T. Huckabay, Jr. who owns a 480 acre tract adjacent to the Herring property. Plaintiff sued to expropriate a servitude 85 feet wide across the *1329 farmlands of the defendants for the purpose of constructing and maintaining electric transmission lines. The trial judge rendered judgment granting the servitudes sought conditioned upon payment to the defendant Huckabay of the total sum of $205,898 plus an attorney's fee of $3,750 and the payment to Herring of the sum of $252,615 plus an attorney's fee of $3,750. Eighteen days after the rendition of this judgment the plaintiff paid the specified sums by deposits in the registry of the court. The plaintiff appealed both cases. Both defendants have answered the respective appeals seeking eighteen days legal interest, awards for the value of the servitudes taken and increases in the awards for attorneys' fees to 25% of the awards.
The substantial issues on appeal are:
1. Did the trial court err in awarding both diminution in value of the remainder of the farmlands affected and additional farming expenses for periods up to ten years because aerial spraying will be prevented by the new transmission lines?
2. Did the trial court err in failing to make specific awards for the values of the servitudes taken, and if so what are these values?
3. What are the severance damages to the remainders of defendants' properties?
4. Are defendants entitled to legal interest on the amounts awarded for the eighteen days between the time the judgments were rendered and the time the awards were paid by deposit in the court?
5. Are defendants entitled to increases in the awards for attorneys' fees?

GENERAL FACTS
The two tracts of farmland in question are alluvial soil located in the Red River valley and are suitable for growing either cotton or soybeans. At the time of this judgment of expropriation in July of 1983, most of the affected property was planted in cotton. The farms are shown on maps and aerial photographs filed in evidence. The 480 acres owned by Huckabay lies generally north and east of the 240 acres owned by Herring, and the two tracts are separated by Honey Bayou. The new servitude runs generally east and west and crosses portions of both farms. Huckabay claims damages to only 63 acres of his land. Herring claims damages to 220 acres.
There is a previously existing electrical transmission line immediately north of the new 85 foot wide servitude. On the affected property of Huckabay the existing line is supported by three H-frame poles averaging about 60 feet in height, and there is a sag in the line to within 27 feet of the ground between each existing pole. The new transmission lines will be supported on the Huckabay property by one new steel pole 134 feet high. This pole will have four guide wires extending approximately 50 to 70 feet from the base of the structure.
On the Herring property, there are presently six existing poles averaging about 60 feet in height. The minimum sag of the lines between these poles is also about 27 feet from the ground. The new lines will be supported on the Herring property by three steel towers averaging about 115 feet in height.
The trial judge found the farmland affected has a market value of $2,000 per acre, the highest estimate given by defendants' experts. Plaintiff's experts estimated the market value of the lands affected at $1,500 per acre. The trial judge did not make a specific award for the value of the servitudes taken on either tract. He awarded severance damages of 50%, $1,000 per acre for 63.4 acres of Huckabay land and $500 per acre for 240 acres of Herring land. In addition, the trial court awarded to Huckabay the sum of $142,498 representing the additional expenses for periods up to ten years which the court estimated would be required by Mr. Huckabay because he can no longer use aerial spraying and will have to buy and use ground level equipment. As to the Herring property, the trial court awarded $132,615 for additional farming expense over the next ten *1330 years. Thus the awards to the two defendants were as follows:

HUCKABAY:
1. Severance damage to 63.4 acres
at $1,000 per acre $ 63,400
2. Additional farming expenses for
up to ten years 142,498
TOTAL $205,898
HERRING:
1. Severance damage to 240 acres at
$500 per acre $120,000
2. Additional farming expenses 132,615
TOTAL $252,615

In addition to the above awards, the district court awarded to each defendant the sum of $3,750 as attorney's fees.

SEVERANCE DAMAGES AND ADDITIONAL FARMING EXPENSES
The principal dispute in these cases concerns the award by the trial court of both diminution in value to the remaining affected properties and in addition the increased farming expenses over periods up to ten years which will be required because of the difficulty or impossibility of future aerial spraying. Plaintiff and several other electric utility companies which have filed amicus curiae briefs contend this is a duplication of awards which exceeds the requirement of LSALouisiana Constitution of 1974, Article 1, § 4 that "the owner shall be compensated to the full extent of his loss."
The trial judge cited State, Department of Highways v. Westport Development Co., Inc., 332 So.2d 918 (La.App. 2d Cir. 1976) as authority for the rule that the land owner is entitled to "such damages as were proven with some mathematical certainty based on the evidence." Using this rule, the trial judge reasoned that defendants had proved by their expert witnesses that because of the inability to use aerial spraying the defendants will in the future have additional expenses in controlling the grasses, weeds and insects around the new towers and in purchasing new tractor pulled spraying equipment for use in spraying any crops grown under the power lines or on the remaining affected tracts. Much testimony was introduced into the record by defendants' experts to show all of these costs. The trial judge accepted some of these expenses as proved but rejected others as being too speculative.
The plaintiff and the amicus curiae briefs argue that in effect the trial judge has used the "cost to cure" approach, which is improper in the present case. Plaintiff contends the applicable rule in the present case is that stated in State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), in which our Supreme Court said:
* * * If such an approach [cost to cure] has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking, for we find no sound basis in this Court's jurisprudence for the application of this method of assessing severance damages, save in a most unique situation (which is not present here) like that appearing in State Department of Highways v. Ouachita Parish School Board, 162 So.2d 397 (cert. denied). See also Nichols on Eminent Domain, 3rd Ed., Vol. 4, Sec. 12.32, pages 217-238, which indicates that this approach may be used in special instances wherein the ascertainment of market value of the facility is not possible. 229 So.2d at p. 93 [Bracketed material added.]
The plaintiff argues with merit that there is nothing unique about the present case which requires the use of the "cost to cure" approach. The use of "cost to cure" in the present case results in Huckabay receiving $3,268 per acre for his 63 affected acres, this being more than the $2,000 per acre value of the land found by the trial judge. The award of $1,148 per acre to Herring for his 220 acres affected is more than half the value of his entire farm. The market value of the land can be readily established by the testimony of the expert witnesses for the plaintiff, who fix the value at $1,500 per acre, and the expert witnesses for the defendants who place the highest estimate at $2,000 per acre. Under the above quoted rule from the Mason *1331 case, plaintiff contends that the only relevance of the evidence as to increased cost of farming operations is to show any diminution in market value resulting from the partial taking.
We agree with plaintiff's analysis. This is not a unique case requiring the award of "cost to cure" damages or any other special damages over and above diminution in market value to a remainder. Thus, we conclude that the awards to both Huckabay and Herring for additional farming expenses for the next ten years are improper, and the judgments appealed must be amended respectively to delete these awards.

VALUE OF SERVITUDES TAKEN
The next issue is the value of the servitudes taken. The trial judge made no specific awards for this. We conclude the evidence is sufficient to show this value and that it should be awarded specifically.
Plaintiff's expert real estate appraisers, Thomas B. Dupree, Jr. and James A. Young, used comparable sales to fix the market value of the land at $1,500 per acre. They estimated the value of the servitude at 75% of market value, with a 25% residual use of the property to the owner. Using these estimates, Huckabay would receive $4,433 for the servitude taken on 3.94 acres of his land, and Herring would receive $7,110 for the servitude taken on 6.32 acres of his land.
Defendants' expert, Dr. Melvin Stephens, estimated the market value of the land at $1,800 to $2,00 per acre. As stated above, the trial judge used the higher of these two figures.
We find no manifest error by the trial judge in fixing market value at $2,000 per acre. The only evidence in the record as to the value of the servitude per acre as a percentage of the market value of the land, is the estimate of plaintiff's witnesses, Dupree and Young, that the value of the servitude is 75% of the market value of the land. This results in a value of $1,500 per acre for the servitudes taken. We will award to Huckabay for the 3.94 acres of his land encumbered by the servitude the sum of $5,910, and to Herring for the 6.32 acres of his land encumbered by the servitude the sum of $9,480.

SEVERANCE DAMAGES TO REMAINDERS
The next issue is the severance damages caused by the taking of the servitudes to the remainders of the affected properties. As stated above, the trial judge found the market value of the land will be diminished because of the inability to use aerial spraying. The evidence is in conflict as to whether aerial spraying will be prevented by the new electric transmission lines supported by towers averaging 115 feet in height, and running parallel to the existing lines which are supported by H-frames and average about 60 feet in height. Plaintiff introduced the testimony of several witnesses that planes can fly under the existing lines, which sag to within 27 feet of the ground, and can easily fly under the new lines which will be higher. From this testimony, plaintiff argues that aerial spraying will be possible.
Defendants' witnesses testified that in the past the planes did not fly beneath the existing lines, but instead flew over them at a height which was still sufficiently low for effective spraying of insecticides and other chemicals. The defense witnesses testified persuasively that planes could not and never have flown beneath the existing lines, that the new towers with their four supporting guy wires will make it more hazardous to fly beneath the new wires, and that if the planes fly above the new lines additional amounts of chemicals will be required to be effective.
From the evidence as a whole, we conclude, as did the trial judge, that planes cannot safely fly beneath the existing wires, and that the height of the new lines will substantially diminish the effectiveness of aerial spraying by planes flying over them. Thus the market value of the remaining affected lands will be substantially *1332 diminished by the construction of the new electric transmission lines.
The next question is the amount of severance damages to be awarded to each of the land owners. We will first consider the Huckabay land. At the outset, we note that Huckabay claims severance damages to 63.4 acres of his land. However, the maps and aerial photographs filed in evidence show that a portion of the south of this 63.4 acres is located in woods, and that actually only 61.3 acres is cultivated land which would be adversely affected by the inability to use aerial spraying. As the aerial photographs show, the new transmission lines will cross in an east-west direction approximately through the center of Huckabay's 61.3 acres. Any use of aerial spraying on this tract in a north-south direction will be almost impossible because of the existing and the new electric transmission lines. Moreover, any aerial spraying in an east-west direction will be almost impossible because of the high trees located along the east and west sides of the 61.3 acres. We agree with the trial judge that Huckabay's remaining land will be diminished in value by 50%. Accordingly, we will award to Huckabay severance damages in the sum of $1,000 per acre for the 61.3 acres of his cultivated land which is affected, resulting in an award to Huckabay of severance damages in the sum of $61,300.
Now turning to Herring, the problem of severance damages to the remainder is more complex. The Herring tract of 240 acres is approximately triangular in shape, with the point of the triangle to the south and the northern base of the triangle bounded by Honey Bayou, which separates Herring from Huckabay. The transmission lines run through the northern portion of the Herring property in an east-west direction and are only about 500 feet south of Honey Bayou. There are trees approximately 100 feet high along Honey Bayou, and the new towers are an average of 115 feet in height. Thus, Mr. Herring and his witnesses testified that it would be virtually impossible to use aerial spraying on the 500 foot wide strip of land between the new transmission lines and Honey Bayou. This is clearly shown by the aerial photographs filed in evidence. Planes could effectively spray by flying over the existing line, but the new line will be too high for effective spray by planes flying over it.
As to the approximately 140 acres of Herring land which lies south of the power lines and comes to a point at the south, Herring's witnesses testified that although it would be possible to spray this portion by flying in an east-west direction, it would take a great deal of turning and short passes and would make it very difficult to spray.
Unlike the Huckabay tract of 61.3 acres as to which the trial judge held, and we affirm, that the severance damages are 50% of market value, the Herring property was found by the trial judge to be diminished in value by $500 per acre for the entire affected tract. We note that the trial judge awarded $500 per acre severance damages to 240 acres of Herring property, but actually Mr. Herring is claiming severance damages to only 220 acres. This is his testimony and is stated in his appellate brief. The diminution in value of $500 per acre is based on the testimony of the defendant's witnesses, Dr. Melvin Stephens and Mr. Jess Lloyd, Jr., who discussed all of the problems that the new towers and transmission lines will cause for aerial spraying to the entire Herring property. Instead of fixing the severance damages at 50% for the narrow strip of Herring property between the new power line and Honey Bayou and using a lower percentage for the Herring property south of the transmission lines, these experts express the opinion that the Herring property overall will be diminished in value by $500 per acre. Except for the testimony of plaintiff's witnesses that planes can fly underneath the existing line, there is no evidence by the plaintiff to contradict the estimate that the Herring property as a whole will be diminished in value by $500 per acre. We find no manifest error by the trial judge in using this figure of $500 per acre, *1333 but we do note that Herring only claims severance damages to 220 acres, rather than the figure of 240 acres used by the trial judge.
Thus, we conclude that Herring is entitled to severance damages of $500 per acre on 220 acres, a total of $110,000.

LEGAL INTEREST
The next issue concerns the claim by defendants in their answers to the appeal for legal interest at the rate of 12% for a period of eighteen days between the date the judgment was signed and the date the plaintiff deposited the payment in the court. Defendants contend it was a money judgment which bears interest from the day it was signed. The plaintiff contends it was not a money judgment, but instead was a judgment granting to plaintiff the servitudes as of the time payment was deposited.
A reading of the judgments shows that plaintiff's contention is correct. We conclude defendants are not entitled to the interest claimed for eighteen days.

ATTORNEYS' FEES
As stated above, the trial judge awarded $3,750 to each land owner as attorneys' fees. The same attorney represented both land owners. Thus, the attorney received $7,500 for his work in these cases which were consolidated for trial and appeal, because of the similarity of issues and evidence.
Jurisprudence has established the rule that the trial judge has much discretion as to the award of attorney's fees. We find no manifest error by the trial judge as to his awards in these cases.

DECREE
For the reasons assigned, the judgment appealed in the present case is amended to reduce the sum which Pugh T. Huckabay, Jr. and his wife, Julie Rocquin Huckabay, are entitled to be paid to the sum of $70,960, of which $5,910 represents the value of the servitude taken, $61,300 represents severance damages to the remainder and, $3,750 represents attorney's fees. Otherwise, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants.
AFFIRMED AS AMENDED.