BARNETTE, Judge.
This is a proceeding initiated by the State of Louisiana, through the Department of Highways, for the expropriation of 3.75 acres of land for highway purposes. Upon taking the land in question the Highway Department deposited in the registry of the court the sum of $2,813 as just compensation, computed at $750 per acre. There is no serious contention that this amount was not a fair appraisal of the actual land value, but the defendants claim substantial severance damage for which they seek reimbursement.
Three expert appraisers testified at the trial and their estimates of the land value ranged from $750 per acre, by the Highway Department’s expert, to $800 and $950 respectively, by the defendant’s two experts.
Estimates of severance damage, ranged from none by the Department’s expert to $26,800 and $29,550 by the defendant’s two expert appraisers and $25,000 by one of the defendant co-owners. The trial court accepted the lowest of the appraisals, namely $750 per acre, or $2,813 for the 3.75 acres taken and $25,000 for the severance damage. Fees for each of the two expert witnesses for defendants were fixed at $1,000 and taxed as costs. Judgment was rendered accordingly.
The Department of Highways appealed seeking a reversal of that portion of the judgment which awarded severance damage.
Counsel for defendants-appellees states in his brief before this court that in answer to the appeal, defendants “ask for increase in the amount of just compensation and damages allowed by the trial court.” We find no answer to the appeal in the record before us and will not consider the request for an increase. Alternatively, defendants seek an affirmance of the judgment of the trial court.
The taking of the property in question, July 27, 1972, was for right-of-way for State Highway Route 70 in Assumption Parish, between Paincourtville and the Sunshine Bridge. Prior to this taking the Highway Department had purchased in *596 April, 1971, from these defendants, a strip of land 300 feet wide (with an additional SO feet on each side as temporary construction servitude) for State Highway Route 70, almost entirely across the defendant’s property known as Halfway Plantation. Present plans call for a two-lane highway to be constructed on one side of the right-of-way, leaving sufficient space for possible future conversion to a four-lane highway.
The right-of-way acquired by purchase, comprising approximately 50 acres, began at the southern property line of Halfway Plantation and extended in a north-northeasterly direction a distance of approximately 5,000 feet stopping some 300 feet short of the northern property line of Halfway Plantation. The failure to acquire a right-of-way completely across the defendant’s property was the result of an error with respect to the exact northern property line of Halfway Plantation and the extent of the defendant’s ownership. It then became necessary for the Highway Department to acquire the additional approximate 300 feet of right-of-way to completely traverse the defendant’s property, plus a small amount of land on each side of the extended right-of-way for drainage purposes, all of which totaled 3.75 acres and is the subject property of this proceeding.
Prior to the taking in question the Halfway Plantation comprised approximately 1,384 acres, which included the small parcel lying between the end of the purchased right-of-way and the northern boundary line of the plantation. After the taking of the 3.75 acres the defendants had two tracts remaining consisting of 986 acres on the west side and 394 acres on the east side of the right-of-way. That remaining on the east side included about 200 acres of woodland, leaving about 194 acres suitable for sugar cane cultivation.
Prior to the taking of the 3.75 acres in question, but after the purchase of the 5,000 feet of right-of-way, the east and west tracts were physically connected at the northern end of the purchased right-of-way. The taking of this parcel resulted in a complete severance of the defendant’s sugar cane plantation.
The defendants contend that the complete severance of their plantation by the extension of the right-of-way to their northern boundary has substantially damaged the now remaining two separate tracts of land. They contend among other things, that the smaller tract left on the east side is. now without facilities necessary for operation of a sugar plantation, and that the relatively small amount of land left suitable for sugar cane cultivation is too small to justify the expense of providing separate facilities, such as derricks and loading equipment, implement sheds, etc. They point out that all such facilities are provided on the west side of the right-of-way and are virtually inaccessable to the east side. The crossing of the highway, with tractors, cane trucks and other cumbersome equipment which would be subject to Highway Department limitations and restrictions for traffic control including the prohibition of tracking mud on the highway, portends many hazards, much inconvenience and loss of time.
We agree that these are obvious factors to be considered as materially affecting the practical and efficient operation of the two tracts of land as a single plantation unit. These factors would be considered as relevant to severance damage if it is shown that they adversely affect the land remaining after the taking. However, in view of the rationale of this opinion and the conclusion we have reached, it is not necessary for us to consider that question.
At the beginning of the trial of this case in the District Court, counsel for the Department of Highways made an opening statement in which he related for the Court’s information the events leading up to the expropriation of the 3.75 acres in question, in substance as we have stated above. Counsel for the defendants object *597 ed to any reference to the prior negotiations for and purchase of the right-of-way alluded to. He acknowledged that what plaintiff's counsel had said was "basically . . . correct” but argued that it had no relevance to the issues then before the court. Counsel for plaintiff argued that “a central issue in this case will be whether the defendants actually believed the road was going to stop 300 feet from the end of their property . . .” and whether or not they intended to sell the entire, [right-of-way] from one boundary to the other.” The court ruled: “We will cross that bridge' when we come to it.”
After plaintiff’s first witness was called and qualified as an appraisal expert and began to testify, counsel for defendants again objected to any questions or testimony tending to change or alter the deed by which the Highway Department had acquired the 5,000 feet of right-of-way. His objection was based on the parol evidence rule, citing Civil Code Article 2276 and pertinent cases. Plaintiff’s counsel argued that it was not his intention to contradict or vary the terms of the deed but rather to show that the defendants thought they were conveying a right-of-way completely across their plantation, causing a severance into two parts, for which they now seek further compensation.
The court’s ruling was in substance that it was not concerned with what had transpired between the parties in the past and would hear no testimony on that, and would hear and consider only the issues of expropriation, the just compensation and severance damages for the taking of the 3.75 acres in question.
Near the conclusion of the trial the plaintiff recalled its first witness, Mr. Driggers, in rebuttal and again sought to question him about certain provisions in the deed relative to crop damage, to explain why he had not considered that an issue in making his appraisal and to interrogate him concerning the construction servitudes about which defendant’s expert, Mr. Book, had testified. Defendant’s counsel objected to his testifying regarding crop damage, which objection was sustained, but the witness was permitted to proceed a bit further relative to “headlands” and access roads to which the Highway Department had committed itself, and in doing so referred to the provisions of the deed on that point. When then asked if he had a copy of the deed and he answered affirmatively, defendant’s counsel again objected to any reference to it, which the court sustained as not being proper rebuttal. Then followed extended argument whether the proffered testimony was proper rebuttal of the defendant’s witness, Mr. Savoie, who had testified that there was a “verbal agreement” concerning certain access roads. After the court’s ruling of inad-missability and an attempt to introduce the deed as a “proffer” was denied, the court on reconsideration of the issue, allowed the deed to be introduced as a “proffer” of evidence, subject to the defendant’s objection. The court then permitted the witness to give his testimony as a proffer relative to the access roads and approaches to the two remaining tracts as provided in the deed. The witness read into the record certain pertinent provisions of the deed which we will discuss more fully below.
We think the “proffered” deed and the testimony of this witness are admissable in evidence and have a very significant relevance to the issue of severance damage, which, after all, is the only issue before this court.
The deed in question was made a part of the record and is before the court upon the specific pleading of the defendants. They cannot now be heard to object to its admissability for consideration by the court. In their answer to plaintiff’s original and supplemental petition, the defendants alleged in paragraph 20 as follows:
“That by act of sale recorded in Conveyance Record 105, Page 8, under Entry No. 97884, Dugas and LeBlanc, Ltd. *598 and its co-owners conveyed to the State of Louisana, Department of Highways, a portion of said tract, all as can be seen from said act of sale which is made a part hereof by reference thereto. That the land transferred therein did not include the property herein expropriated.”
They further alleged in paragraph 21 as follows:
“That said act of sale did not sever the said Halfway Plantation, but that the expropriation of the tract of land herein coupled with the aforementioned act of sale completely severs said tract of land, leaving two separate and distinct tracts. That Defendant would not have entered into said act of sale for the consideration recited therein had it known then of this additional taking. That Plaintiff never indicated to Defendant that it would take the additional land expropriated herein.”
It is our opinion that the defendants did believe that the right-of-way granted by the deed crossed their property from one boundary line to the other, completely severing their plantation. It is incredible that anyone would assume that the Department of Highways would purchase a' highway right-of-way coming to a dead end in the middle of a cane field.
If the defendants were aware that their northern boundary line was 300 feet beyond the end of the purchased right-of-way, certainly some inquiry would have been made as to why the right-of-way stopped short of that point. No inference of deception or withholding of material information with intent to gain an unfair advantage is indicated, but quite the contrary, as evidenced by the testimony of defendant’s witness, Mr. Charles Savoie.
Mr. Savoie identified himself as a part owner of the property in question, owning one-twelfth individually and also being a stockholder and president of Dugas and LeBlanc, Ltd., the owner of one half interest in the property. He testified in pertinent part as follows:
“Q Isn’t it really true that you thought you were selling a strip all the way across your property ?
“A Yes. I’ll tell you the truth; yes, that’s correct. I can’t deny that.”
It is our opinion and we so hold as a fact that the purchased right-of-way stopped short of severing the defendant’s property by 300 feet as the result of a mutual error of fact. The defendants are equally responsible with the Department of Highways for the failure of the Department to acquire by purchase the right-of-way completely across their plantation. They will not now be permitted to gain an unfair advantage as a consequence of the error to which they contributed.
We stated above that at the very outset of the trial below, counsel for defendants objected to any reference to the prior right-of-way acquisition by purchase as being irrelevant to the issue of expropriation of the 3.75 acres in question. He further objected to testimony with respect to the deed in violation of the parol evidence rule. The deed was introduced into the record by the defendants who specifically made it a part of their answer by reference. It is therefore a part of the record for all purposes. LSA-C.C.P. art. 853. Foster v. Stewart, 161 So.2d 334 (La.App. 1st Cir. 1964). We find it contains provisions relevant to the issue of severance damage. We further hold that no testimony was given nor proffered which in anywise contradicts or varies the terms of the deed. It is the best evidence of its contents and is properly before the court. We will now address ourselves to its pertinent provisions.
The deed was executed by the defendants landowners, as vendors, to the State of Louisiana and the Department of Highways, as vendee. It conveys full owner *599 ship of the particularly described right-of-way to the State Department of Highways with reservation of mineral rights. It further provides for particularly described temporary construction servitudes to be terminated upon completion and acceptance of the highway project.
The cash consideration was $30,315.00. The Department of Highways further obligated itself to compensate for crop damage to the seed cane planted in 1970 and to the first and second year stubble from the 1970 planting at a fixed sum per acre, with the extent of acreage crop damage to be determined by an agreed method of measurement no later than May 15, 1971.
The Department further obligated itself to “. . . construct a field service road (headland) . . .’’on each side of the right-of-way between certain points identified by Highway Survey Station numbers and to install “therein” 20 lateral culverts; 17 in the west side service road and 3 in the east side service road, the exact locations of each being specified.
It also obligated itself as follows:
“The Department shall construct standard vehicular approaches within the limits of the property herein conveyed from the roadway to the Vendor’s remaining property to the left of the cen-terline opposite Highway Survey Stations . . . [specifying seven locations].”
“The Department shall construct standard vehicular approaches within the limits of the property herein conveyed from the roadway to the Vendor’s remaining property to the right of the cen-terline opposite Highway Survey Stations . . . [specifying five locations].”
Following the recitation of the cash consideration, the deed provides:
“Vendor acknowledges and agrees that the consideration provided herein constitutes full and final payment for the property hereby conveyed and for any and all diminution in the value of Vendor’s remaining property as a 'result of the transfer of this property for highway purposes.” (Emphasis added)
The foregoing terms written into the deed clearly indicate that the vendors and the representative of the Department of Highways in negotiating the purchase of the right-of-way took into account both crop damage and the inconvenience caused by the severance of the vendor’s plantation and provision was made to compensate for crop damage and for service roads and access points to facilitate the crossing of the proposed highway between the two remaining tracts of land. The vendors, defendant-appellees herein, expressly acknowledged and agreed that the consideration provided in the deed [the ca'sh paid and the other obligations to which the Department committed itself] constituted full and final payment for the property conveyed “ . . . and any and all diminution in value of . . [their’] remaining property as a result of the transfer of this property for highway purposes.”
It was not until after this negotiated right-of-way sale was consummated that the parties discovered that the right-of-way fell short by approximately 300 feet of completely severing the vendor’s plantation. This error of fact, which we hold was mutual, resulted in giving the defendants-ap-pellees a junction point approximately 300 feet wide, physically connecting their east and west tracts, which neither of the parties intended as revealed by the testimony of Mr. Savoie, one of the defendants and their apparent representative at the trial below. The defendants called no other witnesses except the two expert appraisers.
The issue of consequential and severance damage was injected into this proceeding by the defendants and the burden of proof is upon them. LSA-R.S. 48:453; *600 State, through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961); State, through Department of Highways v. Snider, 276 So.2d 401 (La.App. 2d Cir. 1973); State, through the Department of Highways v. Mason, 218 So.2d 329 (La. App. 2d Cir. 1969), writ granted 253 La. 635, 219 So.2d 173 (1969), affirmed 254 La. 1035, 229 So.2d 89 (1969).
We think it is self-evident that the complete severance of defendants’ plantation caused substantial damage to the two remaining tracts, particularly the smaller tract on the east side of the highway. Severance and consequential damage as such, as distinguished from the monetary compensation factor, is not, nor can it be, seriously disputed. The defendants have discharged this aspect of their burden of proof. In effect what the Department of Highways is contending is that the defendants have already been compensated for complete severance and the consequential damages resulting therefrom.
The defendants affirmatively alleged as the basis of their demand for additional compensation for the severance in paragraph 21 of their answer:
“ * * * That defendant would not have entered into said act of sale for the consideration recited therein had it known then of this additional taking. That Plaintiff never indicated to Defendant that it would take the additional land expropriated herein.”
As to this latter assertion the obvious reason why there was no such indication was that neither party then knew that these defendants owned the 3.75 acres in question and there was no reason to discuss it. As pointed out above, no questions were asked and the defendants could hardly have assumed that the highway would proceed no further than the dead end in their cane field. If they really knew this to be a fact their failure to disclose it would have implied an intent to deceive. We have said above there is no indication of any such intent by either party.
The defendants have failed to prove their affirmative allegation in paragraph 21 of their answer but on the contrary their allegation was disproved by the ac-knowledgement of their own witness, Mr. Savoie. Having made this the basis of their demand for additional severance and consequential damage, we must hold that they have failed to discharge the burden of proof which the law imposes upon him.
Since the plaintiff, Department of Highways, has contributed to the error which resulted in this additional taking through expropriation proceedings, as we have discussed above, we will exercise the discretion vested in us by Article 2164 of the Code of Civil Procedure, with respect to court costs, including expert witness fees, and will not disturb the cost assessment as fixed by the trial court. Additionally we will assess the costs of this appeal to appellant insofar as it is legally amenable for costs.
For these reasons the judgment appealed is amended by reducing the award to defendants from $27,812.50 [sic] subject to a credit in the sum of $2,813.00 deposited in the registry of the court to the sum of $2,813, which amount is now fixed as just compensation for the property taken, and being the amount previously deposited in the registry of the court, and rejecting the demands of the defendants for severance or consequential damage. As thus amended and in all other respects, it is affirmed.
The appellant is cast for all costs which may legally be assessed to it.

Amended and affirmed.