STOULIG, Judge.
The issue presented by this appeal is restricted solely to the severance damages arising out of the expropriation of realty for the construction of an overpass across Interstate Highway 10 in Jefferson Parish, Louisiana. No dispute exists as to the value of the land taken or for the necessity of the expropriation.
The matter is complicated by the fact that two separate expropriation suits were filed, even though the takings were authorized by the same Highway Department resolution, covering the same project, with the same program and parcel numbers. The first proceeding was filed on April 2, 1963, and involved the taking of defendants’ property for the Interstate 10 roadbed and two access frontal roads. On March IS, 1965, approximately two years later, another expropriation proceeding was instituted against the .same defendants for two small portions of their property to be used in the construction of the Cleary Avenue overpass across Interstate 10. A motion by the Highway Department to consolidate both suits for trial purposes was denied. Judgment was rendered in the first case on August 26, 1965, and in the second matter on June 30, 1970. It is from the latter judgment that this appeal was lodged.
Messrs. Neyrey (Henry, Jr., and John) were the owners in indivisión of a certain parcel of land, measuring 279 ft. fronting on the lower boundary of Veterans Highway and extending in a southerly direction abutting Cleary Avenue some 3,033 ft. to Canal No. 4. This tract of ground was subdivided into squares designated A, B, C, D, and E, and these squares were in turn redivided into lots. Except for Square “A”, which was classified as “C” Commercial, all of the remaining squares were zoned “R-3”, which permitted their use for multi-family dwellings, apartment, office, and professional buildings, etc. As of the *742 date of the initial taking, the entire property was undeveloped. Interstate Highway 10 and its access roads perpendicularly bisected defendants’ property creating north and south remainders. At the time of the second trial the owners had developed a portion of the northern segment of their property and had disposed of the southern portion.
At the outset it should be noted that the quantity of the defendants’ property taken in connection with the construction of the overpass was minimal. It consisted of 2,256 sq. ft. in Square “D”, lying south of the Interstate Highway, and 2,333 sq. ft. of Square “C” situated on the opposite, or northerly, side. At the commencement of the trial it was stipulated that the market value of the part taken was 500 per sq. ft. for the southern portion (Square “D”) and 900 per sq. ft. for the northern segment (Square “C”). Based upon this valuation, the owners are entitled to the sum of $3,284 for the expropriated areas. As part of the stipulation, it was agreed that these valuations would not be controlling as to the market value of the remainder of defendants’ property in determining the issue of severance damages.
To place in proper perspective the effect and extent of the appurtenance as it relates to defendants’ holdings, it is necessary that the overpass be described. This facility is 36 ft. wide and 24 ft. in height at its apex and 1,800 ft. in length. The structure is located on Cleary Avenue and for its entire length abuts the western boundary of defendants’ property, excluding 300 ft., more or less, occupied by the Interstate Highway. Due to its design, defendants’ access to Cleary Avenue was restricted to the intersecting secondary roadways of 27th and 33rd Streets.
Before disposing of the primary issue of this appeal, the severance damages sustained by the property owner, we will consider the preliminary motions filed by both litigants.
Appellees again move to dismiss the devolutive appeal taken by the State Highway Department because of the appellant’s failure to pay the severance damages awarded by the trial court or deposit this amount in the registry of the court as required by LSA-R.S. 19:13 and its corresponding article 2634 of the Civil Code. This motion has been previously considered by this court and denied. State Through Dept. of Highways v. Neyrey, 240 So.2d 586 (1970). Application for writs were not considered by the Supreme Court but right to reurge motion was reserved to appellee. 257 La. 159, 241 So.2d 527 (1970).
Defendants submit that the jurisprudence expressed in the case of State, Department of Highways v. Holmes, 251 La. 607, 205 So.2d 416 (1967), and relied upon by this court in its previous disposition of this motion, is not controlling in the instant matter. It is urged as a distinction that in Holmes the trial court’s award was an additional sum for the property taken over that specified in the order of expropriation, whereas, in this case the trial court’s award was exclusively for severance damages, the initial deposit being tendered as compensation for the minute portions of property taken.
We cannot agree that this is a distinction sufficient to render the Holmes case inapplicable. Severance damages normally arise out of, or as an incident to, the taking of property. The instant expropriation proceeding was to obtain two small parcels of the defendants’ property required for the construction of the overpass. It was a taking of private property, pure and simple, out of which arose the defendants’ counterclaim for severance damages occasioned by the loss of access to the abutting street. Thus, the original deposit made by the State was in compliance with the order of expropriation for the taking as required by the Holmes case and the severance award of the trial court was, in fact, an access award within the contemplation of the Holmes case. Accordingly, we are of *743 the opinion that the rationale of the Holmes case is applicable and the right of the Highway Department to appeal must be maintained.
Appellant’s motion to remand this case to the lower court is refused for the reason that the bases of said motion are the identical issues presented by this appeal for our consideration and review.
In its computation of severance damages, the trial court found the “before” value of the south remainder (Square “D”) to be $1 per sq. ft. and the “after” value 880 per sq. ft., resulting in a severance damage of 120 per sq. ft. to 117,000 sq. ft. of property for a total of $14,040. It awarded severance damages for the northern segment (Square “C”) based upon a “cost to cure” method, at the rate of $1.25 per sq. ft. which it applied to 39,100 sq. ft., for a total dollar value of $48,876.67. In addition it allowed the sum of $11,275, this amount being one-half of the cost that the defendant had to absolve in paving an access strip on his property, which would normally be borne by the opposite property owner had Cleary Avenue itself been so improved.
The Highway Department maintains that the lower court erred in several respects which, for reasons of coherence, will be treated separately.
CONSOLIDATION
Appellant argues the trial court erred in refusing to consolidate for trial purposes its expropriation suit filed on April 2, 1963, with this proceeding filed on March 15, 1965. The apparent basis for the requested consolidation was that both matters were authorized by the same Department of Highway’s resolution covering the same project, with the identical program and parcel numbers.
The lower court has already tried both cases separately and a judgment in the earlier matter has become final and is no longer subject to appellate control. Under these circumstances, even were we to agree with the Highway Department, what relief could we afford? To remand foi; retrial would, indeed, be absurd. It would give the litigant no greater right than has already been afforded to it. Obviously, the issue raised by this objection is now academic and must be rejected.
HIGHEST AND BEST USE
Appellant urges the trial court erred in maintaining the owner’s position that the loss of direct access to Cleary Avenue now requires the construction of a roadway through the center of the property and restricts its development to duplexes as opposed to the more advantageous exploitation permitted under the “R-3” zoning classification.
We are of the opinion that this complaint is well founded. While the loss of access has destroyed the severability of sales of the defendants’ building sites fronting on Cleary Avenue, this fact has not adversely affected the highest and best use of this property. Neither can the lack of funds by the owner to develop the property alter its highest and best use. Factors of size, surrounding development, economics, needs of the community and environment dictate the highest potential utilization of the property within the reasonable immediate future.
Prior to either of the takings, the defendants had the zoning classification of their property changed to “R-3” which permits the construction of multi-family apartment complexes and office buildings. This use still represents the highest and best utilization of the property.
“COST TO CURE” METHOD
Before considering the propriety of the utilization of the “cost to cure” method in determining severance damages, we will dispose of the specifications of error lodged against the manner in which the *744 trial court arrived at the “before” value. The Department submits that the trial court erred in the following respects:
1. In disregarding its prior valuation of 500 per sq. ft. made in the first Ney-rey trial some two months after this taking;
2. In utilizing as a comparable in determining the “before” value of said property a sale made by the defendant 21 months after the taking; and
3. In failing to recognize that the established market value of 500 per sq. ft. for the part taken in this proceeding simultaneously established the “before” value for the determination of severance damages.
Plaintiffs first contention is factually erroneous. The trial court assigned a market value of 750 per sq. ft. for the part taken in the southern portion and allowed 290 per sq. ft. severance damage for the remainder. It must be noted also that the character of the damage in the respective cases were significantly different, the first being compensation for the severing of the defendants’ property into two tracts, whereas, in this matter, severance compensation was sought for total loss of direct access.
The second assignment of error is well founded. Under the circumstances of this case, the sale of realty by the defendant subsequent in point of time to the taking cannot be used as a comparable in the determination of the “before” market value, the reason being that there is testimony of .sales which predate the expropriation and which more closely reflect the market value of the property at the time of taking.
Finally, the remaining complaint of error is without merit. A reading of the transcript reveals that the stipulation of market value of 500 per sq. ft. was entered into solely because of the minimal amount of land in dollar value involved. It was expressly stated that these valuations were purely in the spirit of compromise to eliminate some controversial items too trivial to justify litigating and were not binding as unit values per square foot for computing severance damage.
Admittedly, the “cost to cure” method is an unusual approach for the determination of severance damages and a justification for its use either as a replacement cost or a diminution in market value must be warranted by the special circumstances in the individual case.
Severance damage is the depreciation in market value of the remaining property which has been occasioned by the taking or the physical structure of the public improvement. It may consist of one or several specific items of damage which adversely affect its market value. The most commonly accepted method of ascertaining the amount of this type damage is the “before and after test” which had its genesis in the case of McMahon v. St. Louis, A. & T. R. Co, 41 La.Ann. 827, 830, 6 So. 640, 641 (1889), wherein the Court decreed:
“ * * * As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is the diminution in the value of the property.”
This exposition of law has been so repeatedly followed in a continuing line of jurisprudence that it has become the principal method for computing severance damage—the difference between the market value before and after the expropriation. Although the McMahon case did not involve a taking but only severance damage, this concept has been jurisprudentially enlarged to include partial taking with residual damages to the remainder, such as occurred in this case.
However, under certain exceptional circumstances the “before and after test” will not adequately compensate the owner for his damage and the courts will resort to the “cost to cure” method of computation, not for the purpose of restoration, but to gauge the diminution in market *745 value as would be reflected in a lower purchase price that a well-informed buyer would be willing to pay. The case of State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), stands for the proposition that the “cost to cure” concept should be used in assessing severance damages only in most exceptional situations. The Court stated at page 93:
“ * * * The ‘cost to cure’ concept has been brought into our appellate court jurisprudence apparently by various expert appraisal witnesses, and some appellate courts have adopted it without referring to it as a ‘cost to cure’ theory. If such an approach has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking, for we find no sound basis in this Court’s jurisprudence for the application of this method of assessing severance damages, save in a most unique situation * * *.”
From the aforegoing, it is obvious that only in the most unusual circumstances when the “before and after” method did not adequately compensate the property owner for his severance damage can we resort to the “cost to cure” .system.
The record reveals that due to an increase in the value of property attributable to the combined influences of the general benefits resulting from the public facility, inflated economic conditions, and scarcity of comparable tracts of land, the “after” taking value of the remaining land involved in this matter will be greater than the “before” value, even though this property has sustained severance damage. Thus, the “before and after” test discussed above is rendered ineffective in determining the amount of damages to which plaintiff is entitled.
Under these circumstances the only equitable way to measure the damages is by employing the above referred to “cost to cure” method of valuation. While we are fully aware that as a general rule this method of computation is frowned upon by our courts, State, Department of Highways v. Mason, supra, we nevertheless feel that in this particular instance it is the only equitable way by which to measure the defendants’ losses. Accordingly, we employ it for the limited purpose of demonstrating “a diminution in market value resulting from the partial taking.” The rationale justifying this method of computation is that a well-informed buyer would pay less than market value for the property by a sum equal to the amount of the award, this being the cost necessary to overcome the deficiency created by the taking, i. e., the loss of access. Thus, it is only in this way that the owner of the property is fully and fairly compensated for his loss.
Applying this method of determining the severance damages to the southern remainder (Square “D”), we are of the opinion that had this property not suffered the loss of direct access to Cleary Avenue, the owner would not have been required to dedicate a strip of his land for that purpose along this thoroughfare to the intersecting side street. To the extent of such dedication he was denied full use of his property which is compensable under our expropriation statutes. In order to afford reasonably convenient access to his interior lots the owner was required to allocate a 50 ft. by 872 ft. roadway along Cleary Avenue. This results in 39,000 sq. ft. of roadbed which is totally unproductive or revenue producing. Based upon an evaluation of 420 per sq. ft. (market value of 750 per sq. ft. less prior severance damage awarded of 290 per sq. ft.), the total dollar value of the loss occasioned by the roadway is $16,380. It is market value less this amount ($16,380) that a well-informed buyer or developer would be willing to pay for this property.
We cannot agree with the State’s expert witness that only 31,000 sq. ft. are required for the roadway because his estimate takes into consideration that the overpass returns to grade before reaching the intersecting street. Even if permitted under local traffic regulations, it would be extremely hazardous to attempt to enter Cleary Avenue *746 at the base of the overpass ramp. Undoubtedly, entry will be restricted to the intersecting streets located a reasonably safe distance away and, to provide egress to them, the construction of the 39,000 sq. ft. roadway is necessary.
Contrary to the argument of the State, the Neyreys did not forfeit their right to claim .severance damages by the sale of this portion of their property immediately after the taking. In fact, they specifically reserved their right to these damages in the act of conveyance. Dispositive of this issue is the pronouncement in the case of State, Department of Highways v. Baddock, 160 So.2d 279, 281 (La.App. 1st Cir. 1964):
“ * * * Severance damage is provided for the purpose of adequately compensating the owner of property for the loss sustained by him to the value of the remainder of the property subsequent to the expropriation. Accordingly, Defendants right to recover such loss was not precluded by their subsequent sale of the remainder.”
In evaluating the severance damage to the northern segment (Square “C”) we are not confronted with any prior awards of severance damage. However, the State again submits the trial court erred in not using the 900 per sq. ft. valuation established by its judgment in the first Neyrey case, and in failing to use the stipulated market value for the part taken as a basis for the “before” value of the severance damage. We have previously advanced our reasons for rejecting the argument that the stipulated value is binding upon the court.
We agree that the established “before” value of this property is 900 per .sq. ft. and we find no evidence in the record to warrant changing this valuation. The owner will be required to construct a roadway for the purpose of egress and ingress to the interior of his property and will be required to dedicate an additional 39,000 sq. ft. of land for this purpose. At 900 per sq. ft. a well-informed buyer would pay $35,100 less for the property because of the required dedication for roadway purposes in its development. For this reason the owner is entitled to $35,100 in severance damage.
The sum of $11,275 covering one-half of the paving cost is disallowed. Initially, it was awarded by the trial court on the theory that the street would run through the center of the property. However, since the highest and best use of the property has been determined to be multifamily apartments or an office building, this development necessitates the relocation of the street along Cleary Avenue and therefore it occupies the same status as its counterpart across Interstate 10 in square feet.
SPECIAL BENEFITS
The Highway Department urges that the trial court erred in failing to offset the value of the special benefits against the severance damages.
In the case of Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941), the Supreme Court distinguished between general and special benefits. It stated at pages 660-661:
“ * * * The benefits or advantages, if any, which may result from the construction of the work are either general or special. General benefits are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits. The reason is that the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose.
“The rule is different as to peculiar or special benefits, or those affecting a par *747 ticular estate by reason of its direct relationship to the improvement. If, as a result of constructing a new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits. * * * ”
The only testimony bearing upon this issue was given by the State’s expert appraiser Max Derbes. He testified that each segment of the property had received a special benefit, which he valued at 5‡ per sq. ft., because of its location abutting the north and south frontal roads of Interstate Highway 10. While there exists a fine line of distinction between general and special benefits in the appreciation of value flowing from the public improvement, which is often a subject of dispute, in this instance we have before us only the unre-butted testimony of the State’s appraiser that the property was specially benefitted.
Since this statement is not in conflict with any of the factual circumstances of this matter and has not been contradicted by other testimony, it must be accepted as constituting a preponderance of evidence in support of the determination that the defendants’ property has been so benefitted. Under the doctrine of the Grey case the value of this special benefit may be and was urged as an offset against the severance damages. Based upon 5‡ per sq. ft., the north remainder (Square “C”) received a special benefit of $7,785 and the south remainder (Square “D”) received an identical benefit with a monetary value of $6,665. Accordingly, these amounts are to be deducted from the respective awards of severance damages.
Mr. Derbes also testified that the overpass resulted in a special benefit to the south remainder of the defendants’ property: “* * * [I] n my opinion the special benefits by bringing this property in those various lots closer to development that there was a benefit of one-third (1/3) of the cost of so doing.” He estimated the cost to be $60,000 and valued the special benefits at one-third of this amount, or $20,000. He did not furnish any breakdown or itemization to substantiate his cost of development upon which he based the value of the special benefits. In the absence of such supporting evidence we are compelled to conclude that the Department has failed to bear the burden of proof necessary to establish this fact and its claim for an offset in this amount must be re-j ected.
The severance damage of $35,100 to Square “C” is subject to an offset of a special benefit of $7,785, leaving a net severance damage to this square of $27,315. Likewise, the severance damage’ to Square “D” in the gross amount of $16,380 is subject to a credit of special benefits of $6,665, resulting in a net damage of $9,715.
For these reasons the judgment of the trial court is affirmed in part; amended in part; and reversed in part, and the judgment is recast to read as follows: It is now ordered that there be judgment herein in favor of the defendants, Henry G. Ney-rey, Jr., and John R. Neyrey, and against the plaintiff, State of Louisiana, through the Department of Highways, in the full and true sum of Thirty-seven Thousand and Thirty Dollars ($37,030.00), with legal interest thereon from date of March 15, 1965, until paid, in addition to that amount already on deposit and tendered to the defendants. The right is reserved to have the expert fees fixed by rule. All costs for which the Department may be legally cast shall be paid by the Department.
Affirmed in part; amended in part; reversed in part; and rendered.
REDMANN, J., dissents with written reasons.