538 So.2d 1078 (1989)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
CAROLINE ATKINS CRAWFORD BUSINESS TRUSTS, et al., Defendants-Appellees.
No. 87-1179.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Rehearing Denied March 8, 1989.
Writ Denied May 12, 1989.
*1080 Bertrand & Soileau, Ronald J. Bertrand, Rayne, for plaintiff-appellant.
Watson, Murchison, Raymond Arthur, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOMENGEAUX, Judge.
This case is another in a series of expropriation suits resulting from the construction of Interstate 49. On April 6th, 1983, the State expropriated 133 acres from the defendants out of a formerly 3,600 acre tract, commonly referred to as Bayou Camitte Plantation. The State deposited $306,304.00 in the Registry of the Court as their estimate of full compensation to the landowners for the taking. This figure consisted of $237,867.00 as the value of the property actually taken and $68,437.00 for the severance damages to the remainder. At the trial, both sides stipulated that the only issue to be litigated was the amount of severance damages to fifteen separate fields located on both sides of the Interstate Highway.
After a trial on the merits, the Trial Judge ruled in favor of the landowners and awarded the following amounts. For severance damages to three fields identified at trial as A2, F1 and F2, the Court awarded a total of $105,794.00. This award has not been appealed by the State. For duplication of numerous improvements located on the southern half of the plantation that were no longer easily accessible from the northern half, the Court awarded "cost to cure" of $311,504.00. The court also awarded damages for "economic loss" to the plantation. This award was broken down into "fixed, nonrecurring losses" and "annual, recurring losses" projected for the next twenty-five years on each of the fifteen parcels of land. Nonrecurring losses amounted to $141,185.40 and annual recurring losses for the next twenty-five years amounted to $926,302.27 resulting in a total economic loss award of $1,067,487.67. Finally the Court awarded $250,000.00 as reasonable attorney's fees.
The State appeals three awards by the Trial Court: (1) $311,504.00 for duplication of improvements, (2) $1,067,487.67 for the economic losses, both fixed and recurring, and (3) $250,000.00 in attorney's fees.

FACTS
Before the taking, Bayou Camitte Plantation consisted of 3,600 contiguous acres located along the right descending bank of the Cane River in a rural area of Natchitoches Parish. The plantation raised cattle and produced various commercial crops, including cotton, soybeans, milo and timber. Louisiana Highway 1 and the Missouri-Pacific Railroad cross the plantation in an east to west direction. North-south thoroughfares through the property were provided by Louisiana Highway 119 and Parish Roads 829 and 820. Additionally, private roads ran throughout the property.
In April, 1983, the State expropriated 133 acres through the center of the plantation for the construction of I-49. The expropriated strip ran south of and generally parallel to the Missouri-Pacific Railroad line. The land expropriated had been used as cotton land. After the taking, the only access to the southern half of the plantation was through the overpass at La. Highway 119.
The State paid the landowners $237,867.00 for the value of the land and improvements actually expropriated. The landowners did not contest this amount, but refused to accept the State's offer of $68,437.00 for severance damages to the remaining property. The landowners claimed that 933.17 acres (or fifteen separate fields) were damaged by the expropriation.
A trial on the merits was held in December, 1986, at which time both sides stipulated that the only issue to be litigated was the severance damages to the remaining property. Two expert real estate appraisers, James A. Young and Randy LaCaze testified on behalf of the landowners. Both appraisors prepared lengthy reports on the effect I-49 would have on the plantation which listed extensive severance damages to the property.
*1081 Initially, the reports detailed damage to three fields, identified as A2, F1 and F2. After the taking, field A2 was landlocked. To regain access required that a bridge be built across Bayou Derbonne and a 1.25 acre right-of-way through an adjoining neighbor's property be purchased. The cost of regaining this access was $82,000.00. As a landlocked piece of property, field A2 was worth only fifty percent of its former value, or $113,310.00. The Trial Judge awarded the landowner the "cost of cure" amount of $82,000.00 as it was the least costly method of compensation.
Field F1 was also landlocked and valued as such at $16,480.00. The cost to restore access was calculated to be $19,000.00. As the cost to cure was greater than the value of the property, the reports considered the property to be a total loss as an "uneconomic unit" and, as such, the Trial Judge awarded the landowners $16,480.00 as severance damages to this field.
Field F2 was landlocked and too small to be economically farmed. However, by filling in a ditch that separated it from field F3 and thus forming one large field, its access would be restored and it would again be an economically usable unit. Costs of $7,314.00 to fill the ditch were awarded to the landowners.
The awards for fields A2, F1 and F2 totaled to $105,794.00. The State has not appealed these awards and therefore their correctness shall not be reviewed on appeal. The remaining awards that the State has appealed, namely $311,504.00 for duplication of improvements, $1,067,487.67 for economic loss and $250,000.00 in attorney's fees shall be discussed more fully in conjunction with the merits of each assignment of error.

DUPLICATION OF IMPROVEMENTS
The State appeals the Trial Judge's award of $311,504.00 for the duplication of ten (10) improvements located on the northern half of the property that, after the taking, were less accessible from the southern half. Before the taking, La. Highway 119, otherwise known as Gorum Road, had been one of the primary public roadways the plantation used to reach the southern fields. Parish roads 820 and 829 provided access on the eastern and western ends of the plantation. After the taking, access to the southern half was limited to Gorum Road, underneath the overpass at I-49. The landowners' expert real estate appraisers determined that it was essential that ten (10) improvements be duplicated on the southern half "in order to make the property owner whole". Cost to reproduce the "functional use" of these improvements (without regard to any depreciation of the existing improvements) were estimated as follows:

Corral with hay barn $113,839.00
Hay storage barn with pens $ 41,149.00
Tractor shed $ 23,887.00
Water well $ 3,500.00
General site improvements $ 9,500.00
Barn and cattle shelter $ 31,976.00
Residence relocation and tie-in-costs $ 6,000.00
Restoration of irrigation $ 63,643.00
Restoration of field road tie-in $ 4,785.00
Private drainage ditch silt removal $ 13,225.00
 ___________
Total "cost to cure" $311,504.00

Stated in his reasons for judgment that he believed the award was in keeping with the dictates of the Louisiana Constitution and the enabling statutes, the Trial Judge awarded the landowners $311,504.00 for the cost to duplicate these improvements as additional severance damages. The State argues on appeal that this award was improper because there was no evidence that these improvements were unique in nature, as is required by State, Through Dept. of Highways v. Constant, 369 So.2d 699 (La. 1979). Also, the State contends that the Court erred in awarding this because the landowners presented no proof that these improvements were a necessary part of a profitable business operation.
Article 1, Section 4 of the Louisiana Constitution, 1974, provided for a new measure of damages to the landowner in an expropriation case: "The owner shall be compensated to the full extent of his loss." (emphasis added.) Thus, the landowner must not only be paid the market value of the property taken and severance damages to his remainder, but also that such an *1082 owner be put in as good a position pecuniarily as he would have been had his property not been taken. Constant, supra.
Severance damages are ordinarily calculated as the difference between market value of the remaining property immediately before and after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned. State, Dept. of Transp. & Develop. v. Henry, 468 So.2d 1262 (La. App. 3rd Cir.1985).
In the benchmark case of Constant, supra, our Supreme Court determined that a landowner whose property was partially taken by the State was entitled to an award that was sufficient to restore his business facilities to the condition prior to the taking, even if that amount exceeded the market value of the original parent tract from which the portion was taken. Because of the unique circumstances of the property in question (a parking lot taken from a marina), the Court allowed the landowners to prove their loss through a "replacement cost" approach rather than the more traditional severance damage approach of diminition in value of the remaining property or by a "capitalized income" approach showing the financial losses caused by the taking. The Court noted however:
We do not, by these rulings, announce any general principal that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business nor that the depreciation of the former asset should never be considered.
Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensible to the conduct of the landowner's business operations on the site from which a part is taken. Likewise, in the usual situation the depreciated value of the assets taken will have some lesser effect on the award to the landowner, since he may be fully compensated by the actual pecuniary value of the asset taken. For instance, the full compensation constitutionally provided does not require that the owner receive a new building to replace a dilapidated one which is expropriated. Constant, supra, at 706-7.
In Henry, supra, this Court was presented with an identical factual situation as the case sub judice. In Henry, the Trial Judge awarded damages to the landowner for the duplication of certain improvements on the western half of the property that were still in existence on the eastern half. We reversed this award, finding that under Constant, supra, this award was not justified as the property was not unique in either its location or in its economic value. Instead of duplication costs, the landowner was awarded traditional severance damages; i.e. the difference between the market value of the property before and after the taking. As there was no diminition in value the landowners were awarded nothing.
Initially, we note that, unlike the parking lot improvement that was taken in Constant, supra, for which replacement costs were awarded, the improvements in this case were not taken. The Trial Court's award is in fact duplication costs for still existing improvements. However, the landowner is constitutionally entitled to be compensated to the full extent of his loss. While the facts of the taking in Constant are not the same as in this case, the principles elucidated therein regarding the requirement that the property be unique in nature and location, that the improvement be indispensable to the conduct of the landowners' business operations, and that the depreciated value of the improvements be considered are all relevant to a proper analysis of whether the landowner is entitled to duplication costs as compensation for the full extent of his loss.
Regarding the list of improvements that the landowners' real estate expert considered "essential to make the landowner whole" a thorough review of the trial record shows that the landowners presented *1083 no evidence as to why the duplication of many of these improvements were indispensable to the conduct of their business operations. For example, the award of $41,149.00 for hay storage barns with pens was granted without any showing that the taking rendered the existing hay storage facilities inaccessible or unusable. In fact, assuming the cattle were maintained in the southern property both before and after the taking, hay still had to be brought from the same storage facility and access was still provided by Gorum Road. The awards for duplicating the tractor shed ($23,887.00), general site improvements ($9,500.00) and residence relocation ($6,000.00) were also given without any proof that their duplication was indispensable to the maintainance of the business.
Conversely, the landowners presented sufficient evidence that the farming operations could not be continued without the installation of a water well ($3,500.00) and the boring of a water casing under I-49 for field irrigation ($63,643.00), both necessitated by the taking. Also, adequate proof was shown of the damages to a drainage ditch ($13,225.00) and to several field roads ($4,785.00) caused by the construction of I-49. Regarding the cost for duplicating cattle facilities on the southern half, the landowners presented strong proof that they could not "run" their cattle under the I-49 overpass in order to get them to the headquarter facilities in the northern half. However, we feel that in this instance the award should have taken into account the depreciated value of the still existing improvements. The trial testimony indicated that the majority of the existing improvements were at least thirty years old. No "as is" value of these existing improvements was given at trial. Therefore, we find it necessary to remand this case for further evidence on the depreciated value of the corral with hay barn, cost to reproduce today estimated at $133,839.00 and a barn and cattle shelter, cost to reproduce today estimated at $31,976.00. This shall be determined by ascertaining the value of the land with the existing improvement, as is, less the value of the land without the existing improvement.
In summary, we reverse the following awards:

Hay storage barns with pens $41,149.00
Tractor shed $23,887.00
General site improvements $ 9,500.00
Residence relocation $ 6,000.00
 __________
Total $80,536.00
We affirm the following awards:
Water well $ 3,500.00
Restoration of irrigation $63,643.00
Drainage ditch silt removal $13,225.00
Restoration of field road tie-in $ 4,785.00
 __________
Total $85,153.00

The following improvements shall be awarded but only the depreciated value of the still existing improvements shall be given:
Corral with hay barn
Barn and cattle shelter

AWARD FOR ECONOMIC LOSSES
On appeal, the State has raised two assignments of error regarding the Trial Court's award for economic losses. Initially, the State contends that the landowners were not entitled to any award for economic loss because the parties stipulated that the only issue to be litigated at trial was severance damages. The State argues that economic loss is not a part of severance damages and, as such, despite the fact that the State failed to object to the introduction of this evidence, the Court should not have compensated the landowners for unrequested damages.
At the beginning of the trial the following colloquy took place:
MR. ARTHUR: (Attorney for the landowners)
... The defendant landowners are satisfied, Judge, that the State has paid just and adequate value for the value of land and improvements taken. And that was in the amount, Judge, of $237,867.00. That is included in the suit record under the certificate of estimate of just compensation. The landowners at this time would withdraw any claim for additional value of land and improvements taken and restrict our claim in this litigation, Judge, to the determination of damages. I *1084 might point, Judge, that the same certificate of estimate of just compensation indicates a damage allowance by the State of $68,437.00. That will be the sole issue as far as we are concerned.
THE COURT:
Is that your understanding, Mr. Dry?
MR. DRY: (Attorney for the State)
It is, your Honor.
THE COURT:
The only issue before the Court then will be the amount of severance damages?
MR. ARTHUR:

That's correct Judge. And at this time, if we're ready, I'd call Mr. William Atkins. (Trial Transcript 121-22) (emphasis added).
Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La. 1975). As stated earlier, severance damages are traditionally calculated as the difference between the market value of the remaining property before and after the taking. Henry, supra.
Under Louisiana Constitution 1974, Article 1, Section 4, the landowner shall be compensated to the full extent of his loss. Economic losses for a business have been considered and awarded under this Article. See Constant, supra; Central Louisiana Elec. Co. v. Huckabay, 446 So.2d 1327 (La. App. 2nd Cir.), writ denied, 450 So.2d 361 (La.1984); State, Dept. of Transp. & Develop. v. Tynes, 433 So.2d 809 (La.App. 1st Cir.), writ denied, 437 So.2d 1153 (La.1983). While economic loss to a business is compensable under the Constitution, the damages are in addition to and separate from traditional severance damages to the remaining property.
The State's assignment of error would have merit except for the fact that the State's trial counsel failed to object to the introduction of such evidence at trial. La. C.C.P. art. 1154 provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The Court may grant a continuance to enable the objecting party to meet such evidence. (emphasis added).
The State's failure to object to the introduction of the evidence of economic loss to the plantation business constitutes a waiver of their right to object to such evidence on appeal.
The State next contends that even if the Court properly considered such evidence of economic loss, the award was based on speculative testimony, ill founded opinions, and inadequate proof and, furthermore, constituted double compensation.
Dr. Melvin Stevens, an expert in agricultural management, testified on behalf of the landowners regarding the "economic losses" the farming operation will undergo due to the taking. Dr. Stevens prepared an extensive and exhaustive report on what is termed "economic losses" to the plantation business. This report was introduced into evidence and ultimately adopted in its majority by the Trial Court in the reasons for judgment. After discussing at length general increased travel time, lost labor time, increased wear and tear on equipment and machinery, increased fuel expenses, greater liability exposure, reduced efficiency, *1085 greater weed and insect expenses, and drainage problems caused by I-49's presence, the report then detailed projected losses for each field. These per-field losses were further classified into "fixed, nonrecurring losses" and "annual, recurring losses". Each field's fixed and annual losses varied; some fields suffered greater than others. Items under a field's "fixed, nonrecurring" losses included the following: loss of acreage for turn rows and point rows, loss of drainage, cost to build ditches, loss of use of irrigation wells, loss of "land-forming value", cost of building fences, reduced efficiency, cost of restoration of water and electricity, cost of removing fences, loss of "agricultural use" and the cost of a road. The "fixed nonrecurring losses" of all parcels total to $141,185.40.
Items listed under a field's "annual, recurring" losses included: increased insect and weed control costs, increased liability and insurance costs, reduced efficiency, time lost for equipment, increased travel time, reduced equipment efficiency, "cotton production loss dry land versus irrigation", loss of cotton land made into pasture land, reduced field size and cost to relocate cotton onto soybean land. Total annual recurring losses for all parcels amounted to $67,608.37.
Using Dr. Stevens' calculations of economic loss, Dr. Earl Thames, an expert economist projected the losses for each parcel over a twenty-five year period. The twenty-five year time frame was used based on Dr. Stevens' recommendation that "because of the history of this plantation and the future expectations, I consider a twenty-five year projection for annual costs to be in order." The total annual recurring costs for twenty-five years for all parcels amounted to $926,302.27. Added to the total fixed nonrecurring losses of $141,185.40, the grand total of all economic loss to the Bayou Camitte Plantation amounted to $1,067,487.67. Based on the reports and calculations of Drs. Stevens and Thames, the Trial Judge awarded $1,067,487.67 to the landowners for economic losses to the plantation.
The State contends that even if the Court properly considered such evidence of economic loss, the award was based on speculative testimony, ill-founded opinions and inadequate proof and constitutes double compensation.
At the trial, the State presented no evidence which controverted the landowner's evidence of economic loss. At oral argument, the landowners argued that because this uncontroverted evidence was accepted by the Trial Court, on appeal, we are compelled to accept this finding and cites Dept. of Transp. & Development v. Ford, 520 So.2d 774 (La.App. 3rd Cir.1987), writ denied, 522 So.2d 564 (La.1988), as authority for this assertion.
The defendants' argument is an incorrect interpretation of the manifest error standard of review. Before an Appellate Court can disturb a factual finding of the Trial Court, it must determine that the finding is manifestly erroneous and has no factual basis. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Manifest error has been defined as a finding of fact which is not reasonably supported by credible evidence in the record. Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976); Andries v. Moore, 467 So.2d 1312 (La.App. 3rd Cir.), writ denied, 474 So.2d 1305 (La.1985). Therefore, on appeal, we must determine whether the Trial Court's finding that the landowners suffered present and future economic losses due to the taking was reasonably supported by credible evidence in the record. An award for business losses must be based on adequate proof. Constant, supra; Tynes, supra.
The Trial Court awarded the landowners $141,185.40 for the fixed nonrecurring costs of all fifteen affected fields. The State argues that the items under "fixed, nonrecurring economic losses" suffered by each field are actually the kind of evidence that should have been put forth to establish traditional severance damages, i.e., evidence which showed the diminition in the market value of the property after the taking. The State argues that this evidence was not competent evidence of an economic loss to a business. The State also *1086 contends that the proof was speculative since the losses were not based on any actual economic losses suffered by the plantation in the three and one-half years that had elapsed from the date of the taking until the trial on the merits.
We agree with these assertions by the State. Items such as losses for less acreage due to greater turning rows, loss of drainage and loss of irrigation wells were clearly the sort of evidence that should have been considered in an assessment in the diminition of the market value of the land, not as items of economic loss to the plantation business. Had the landowners been awarded traditional severance damages for the diminition in value of the remaining property, this award termed "economic loss" would have constituted double compensation. However, due to the unique allocation of damages by the Trial Court, the landowners were not awarded an amount calculated by the traditional severance damages method other than for three fields (the $105,794.00 award which was not appealed by the State). We find that the damages termed "fixed, nonrecurring economic losses" should have been considered severance damages to the landowners. They are essentially a listing of additional "costs to cure" the property and, as such, can be considered an appropriate method of calculating severance damages. Constant, supra.
The award for twenty-five years of "annual recurring losses" amounting to $926,302.27, however, is based on speculative projections without supporting proof of actual expenses, profits and losses for the plantation business and cannot be affirmed. The landowners presented no evidence of the actual ongoing profits or losses of their business. Hence, we hold that the finding of economic loss for the next twenty-five years was not supported by credible evidence in the record.
In expropriation proceedings, the burden imposed upon the person having his property expropriated is to establish his claims by a legal certainty, and by reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. State, Dept. of Trans. & Dev. v. Estate of Clark, 432 So.2d 405 (La.App. 1st Cir.1983). We find the evidence of twenty five years of annual recurring losses in this case to be too speculative and lacking of adequate proof of existing business profits and losses to award to the landowners. This award is therefore reversed.
In summary, the award for severance damages of $141,185.40, inaccurately termed "fixed, nonrecurring economic losses" is affirmed. The award for annual recurring economic loss of $926,302.27 is reversed.

ATTORNEY'S FEES
Due to the decrease in the landowners' award, it is necessary to reduce the Trial Court's award of $250,000.00 for reasonable attorney's fees.
La.R.S. 48:453(E) provides that reasonable attorney's fees may be awarded if the amount of the compensation deposited in the Registry of the Court is less than the amount of compensation awarded in the judgment. Such an award may not exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the Court.
As we find it necessary to remand this case for the determination of the depreciated value of two listed improvements, we are unable to assess the final award to the landowners. Hence, we must also remand this portion of the Trial Court's award. We instruct the Trial Court to award attorney's fees of twenty-five percent of the difference between the final award to the landowners and the amount deposited by the State.
For the foregoing reasons, the ruling by the Trial Court is affirmed in part, reversed in part and remanded in part. Costs on appeal are assessed $221.50 to appellant and $221.50 to appellee.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.