556 So.2d 906 (1990)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
G.C. MESSENGER, et al., Defendants-Appellees.
No. 88-1089.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
*907 Ray Dry, Baton Rouge, for plaintiff-appellant.
Luster, Conine & Brunson, Brett Brunson, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, C.J., and FORET and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
This case is another in a series of expropriation suits resulting from the construction of Interstate 49. On June 23, 1983, the State expropriated 44.888 acres from an area of 953.11 acres in Natchitoches Parish. The State proceeded according to the quick-taking powers of eminent domain (La.R.S. 48:441-460) and deposited $104,700.00 in the registry of the court as its estimate of full compensation to the landowners for the taking. The landowners answered the suit and reconvened seeking severance and other damages in excess of $680,000.00.
After a trial on the merits, the trial judge ruled in favor of the landowners. He awarded $80,748.00 as the value of the part taken, and $666,516.80 as damages, subject to a credit of $104,700.00 previously deposited, plus interest. The court awarded $160,641.20 for attorney's fees and $33,645.67 for expert appraisal fees.
On appeal, the State contends that the trial court erred in refusing to consider evidence of post-taking sales of the landowners' remainder property in its assessment *908 of both severance damages and future economic losses to the landowners' farm operation.

FACTS
Before the taking, the Messenger family owned 953.11 contiguous acres located in the Red River Valley of Natchitoches Parish. The tract was rectanglar in shape and was best used for row crop farming. The acreage was primarily cultivated for cotton production, but soybeans were also planted. The record indicates that the Messenger land was excellent farm land even in comparison with other productive farms located in the Red River Valley.
Prior to the taking, the property was readily accessible for farming operations by way of Highway 485 to the north and had east/west access on two field roads and two turn rows. North/south access was by way of four field roads. The property was graded which maximized drainage and irrigation efficiency. Drainage was enhanced by an integrated system of drainage ditches and the property was irrigated by water pumped from four irrigation wells.
Interstate 49 sliced through the Messenger property from the northwest to the southeast, isolating approximately 154 acres on the north and the balance on the south. The project required the State to actually take 44.888 acres; the remaining land was damaged substantially, primarily in terms of drainage, irrigation, and loss of access. After the taking, three of the four water wells were isolated on the north remaining property. The fourth well was actually lost in the taking. The drainage system and the field road system were interrupted or blocked at I-49. The State deposited into the registry of the court $80,748.00 as estimated compensation for the land taken and $24,052.00 as estimated severance damages.
In addition to the damages previously described, the record reveals testimony concerning economic damages, both past and future, that the landowners may incur as a result of increased operating expenses and decreased profitability. The judge awarded "economic damages" based on this testimony, resulting in the following three categories of damages as described by the trial judge:
A. Compensation for the 44.888 private acres actually taken for the necessary and public purpose.
B. Compensation for reduction in value of the remaining acreage as a result of the taking.
C. Compensation for economic losses resulting from disruption of the farming operation.
We affirm the awards for categories A and B, but reverse the award for category C.

A. VALUE OF THE PART ACTUALLY TAKEN
The trial judge correctly awarded $80,748.00 as the value of the part actually taken. The expert real estate appraisers for the State and the landowners differed only slightly on this appraisal, and the judge chose the higher valuation, that offered by the State. This award is affirmed.

B. SEVERANCE DAMAGES
Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. Severance damages are traditionally calculated as the difference between the market value of the remaining property before and after the taking. State, DOTD v. Caroline Atkins Crawford Business Trusts, 538 So.2d 1078 (La.App. 3rd Cir.1989), writ denied, 542 So.2d 1381 (La.1989).
In assessing severance damages, a trial court may consider, in certain circumstances, the cost to cure the property of the effects of the taking. For instance, the cost to cure is relevant when reimbursement for reduction in market value will not adequately compensate the landowner. State, DOTD v. Alexandria Volkswagen, Inc., 348 So.2d 176 (La.App. 3rd Cir.1977); State, DOTD v. Wax, 295 So.2d 833 (La. App. 1st Cir.1974), writ denied, 299 So.2d 800, 802 (La.1974).
*909 In the proceedings below, the court relied heavily on the testimony of the landowners' real estate expert and engineering expert. The engineer, Ed Geiring, testified as to the least expensive and most effective solution to the irrigation problems. At a cost of $110,173.00, a pipeline could be installed between the three remaining water wells and under I-49, thereby providing water to the south side of the Messenger property. Geiring also estimated the cost of constructing turn rows, field roads, and culverts to restore interior access within the two remaining portions. Finally, Geiring suggested land leveling certain portions of the farm to restore some efficiency lost in the taking.
Randy LaCaze, the real estate expert, considered the curative measures discussed by Geiring and determined that the land had diminished in value to a certain extent even with the cure. The acreage remaining to the north of I-49 decreased in value by 12% which reflects the irregular triangular shape of the field, the over abundance of irrigation wells, and the loss of access directly from the southern portion. (Workers and equipment must now go through the I-49/La. 485 interchange.) The acreage to the south decreased in value by 6% because of the irregular shape of the field near the interstate right-of-way, and resulting inefficiency. Using a per acre value of $1,675.00 before the taking, LaCaze calculated severance damages at $209,365.10, the total of the curative measures proposed by Geiring plus the diminished value of the remaining property.
We agree with the trial court that the facts of this case necessitate the use of the "cost to cure" damage assessment as part of the award for severance damages. This calculation represents the only equitable way to measure the landowners' losses. The record indicates that reimbursement for reduction in market value will not adequately compensate the landowners because of the severe irrigation problems caused by the taking.
In contesting the award of severance damages, the State contends that the trial court should have considered the landowners' post-taking sales of portions of the property. This argument is without merit. Severance damage is provided for the purpose of adequately compensating the owner of property for the loss sustained by him to the value of the remaining property subsequent to the expropriation. The law does not require that the expropriatees must still be the owner of the property until the final adjudication of the issue. State, Dept. of Hwys. v. Baddock, 160 So.2d 279 (La.App. 1st Cir.1964); State, Dept. of Hwys. v. Neyrey, 260 So.2d 739 (La.App. 4th Cir.1972). Accordingly, the landowners did not forfeit their right to claim full severance damages by the sale of their property after the taking. We therefore affirm the trial court's award of $209,365.10 as the full amount of the landowners' severance damages.

C. ECONOMIC LOSSES
Under the Louisiana Constitution, Art. 1, § 4, a landowner whose property is expropriated shall be compensated to the full extent of his loss. Louisiana courts have held that economic damages are compensable if adequately proven by the landowner. State, Through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979). The burden of proof on the landowner is to establish his claim by a reasonable proponderance of the evidence; speculation, conjecture, mere possibility or unsupported probability are not sufficient to support such an award. State, DOTD v. Jacob, 491 So.2d 138 (La.App. 3rd Cir.1986), writ denied, 496 So.2d 331 (La.1986). While economic loss to a business is compensable under the constitution, the damages are in addition to and separate from traditional severance damages to the remaining property. Crawford Business Trusts, supra.
The trial court awarded the landowners compensation for economic losses resulting from disruption of the farming operation. Dr. Melvin Stevens, an expert in agriculatural economics, testified on behalf of the landowners regarding the economic losses the farming operation may incur due to the taking. Dr. Stevens prepared an extensive and exhaustive report on what he calls *910 economic losses to this farming business. His report was adopted in its majority by the trial court.
Essentially, the landowners were awarded fixed nonrecurring losses which consisted of one time losses for additional irrigation pipe and for converting land previously in crop production to access roads, turn rows, and ditches. This award was $46,600.00. The trial court did not distinguish this award from the severance damage calculation of "cost to cure" figures established in the testimony of Geiring and LaCaze and adopted by the court. Dr. Stevens' report likewise does not aid this reviewing court in distinguishing the two awards. We therefore must reverse the award as it is merely a duplication of severance damages.
The landowners were additionally awarded annual recurring losses for the two years prior to the trial and five years into the future. This portion of the award totals $418,177.80 and represents the additional costs of labor and fuel resulting from increased time required to move men and equipment about the farm due to the presence of the I-49 barrier across the farm. Also in this category is included the increased cost of irrigation, insect control, weed control and the reduction of in-field efficiency, all of which are caused by the irregular, triangular shape of the fields.
In discussing this award, we note at the outset that Dr. Stevens' report, though voluminous, spoke only generally of the problems he foresees for this farm. We have no financial data from the landowner which shows how much is spent on weed control. We have no payroll records to determine any increased labor costs. The record is void of any factual evidence on which this award can be based.
In analyzing this award more closely, however, we find nothing to distinguish it from the traditional severance damage award of diminished value. Therefore, we would be unable to affirm this award even if it was based on adequate proof. The factors which Dr. Stevens labels "annual economic losses" are actually the same factors, though more particularized, which create the diminished value of this farm land. The fact that an interstate runs through a farm does not in and of itself diminish the value of the farm. Rather, the value is diminished generally if the placement of the interstate causes certain problems such as irregular shaped fields or blocked irrigation channels. These problems were incorporated in the severance damage calculated by LaCaze and previously affirmed herein. LaCaze addressed the problems with the farm's inefficiency from the prospective of market value and had adequate proof to support his calculations. We therefore reverse the award for future economic damages.
On appeal, the State argues that the landowners' future economic losses were mitigated by the sale of certain portions of the land. Because we have already reversed that award in toto, we decline to address this issue.

CONCLUSION
Due to our reversal of the landowners' award for economic losses, it is necessary to reduce the trial court's award of $160,641.21 for attorney's fees.
La.R.S. 48:453(E) provides that reasonable attorney's fees may be awarded if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such an award may not exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court. See also Crawford Business Trusts, supra.
Accordingly, attorney's fees are calculated as follows: The total award affirmed herein is $290,113.10. That amount is subject to a credit of $104,700.00, the amount deposited by the State into the registry of the court. Attorney's fees are twenty-five percent of the remaining amount, or $46,353.28.
The landowners are entitled to legal interest on this difference between the amount awarded and the amount deposited, which comes to $185,413.10. Interest runs from the date title vested in the DOTD *911 until payment is made. La.R.S. 48:455. Interest does not run on the attorney's fee award. State, DOTD v. Townsend, 473 So.2d 99 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 712 (La.1985).
For the above and foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. Defendants are entitled to $185,413.10 with interest, plus attorney's fees in the amount of $46,353.28. Costs on appeal are assessed equally to appellant and appellees.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.